Bentley Kassal, J.
Motion for summary judgment is granted herein in favor of the plaintiff, and the counterclaim is dismissed.
This is an action by the owner of a 14-story loft building in Manhattan to recover the sum of $3,852.58, representing the balance of rent proceeds retained by the defendant which acted as managing agent for the said premises. The defendant is in the business of acting as a real estate management and rental agent and has acted in such capacity in connection with this building since 1943 pursuant to a written ‘ ‘ management and ag'ency ’ ’ agreement. The said agreement was executed by defendant with the previous owner for an initial one-year period which ended on July 31, 1944. One of the provisions of the agreement was an “ automatic renewal ” clause for consecutive one-year periods unless terminated by either party upon three months ’ notice prior to the end of such contract year. Plaintiff became owner of the premises in 1949 and continued to employ the defendant as her management and rental agent although she did not in writing assume the original management agreement. It is not disputed that defendant acted in such management and agency capacity throughout the period from 1949 until the following events occurred:
On August 8, 1969, plaintiff gave defendant written notice that she was terminating the said management as of September 30, 1969. On August 14, 1969, the defendant answered such letter and maintained nevertheless that the written management agreement, in effect from August, 1943 to July, 1944, had been automatically renewed under clause 5 of the agreement for consecutive one-year periods and remained in full force and effect up until one year from August 1, 1969. It based this provision on the contract provision that any termination of this automatically renewed agreement had to be by registered mail at least three months prior to the end of any given year period. It further stated that, since this notice had not been given, the only basis upon which it would cease to act in such capacity would be if it received its agency commission for the entire contract year ending July 31, 1970.
Nevertheless the plaintiff retained another management and rental agent as a replacement for defendant as of October 1, *751 1969. Plaintiff has demanded the balance of the moneys retained by defendant which she claims belongs to her. The defendant interposed a defense denying said claim and an affirmative defense and counterclaim for $7,093.03, with interest from October 1, 1969, which includes its claimed agency and renewal commissions for the period covering October 1, 1969, up to and including July 31, 1970, the balance of the contract year if the said management agreement automatically renewed.
In essence the issues presented herein are these:
(a) Did the plaintiff become a party to the original management contract by its conduct from 1949 to 1969, or must there be an express written assumption of same ?
(b) Assuming the plaintiff became a party to said management contract, does section 5-903 of the General Obligations Law rendering unenforceable those contracts pertaining to automatic renewal provisions of contracts for 1 ‘ service, maintenance or repair ” sustain plaintiff’s contention that this agreement was not enforceable upon her?
In regard to the first question, while there might be controversy as to whether the present owner succeeded as an obligor under this agreement, I need not decide this issue because, even assuming that there had been a valid novation, the absence of the required statutory notice, as decided below in connection with the second issue, is fatal to the defendant’s claim and is decisive herein. (See, however, 42 N. Y. Jur., Novation, pp. 424-430.)
As we directly address the problem of the applicability of section 5-903 of the General Obligations Law to the facts herein, we are confronted with a challenge with little authority and precedent to rely upon. Said statute, which bears the caption: ‘ ‘ Automatic renewal provision of contract for service, maintenance or repair unenforceable by contractor unless notice thereof given to recipient of services,” reads as follows: “ 2. No * * * contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period * * * unless the person furnishing the same # * * a£ ieast 15 days and not more than 30 days previous to the time specified for serving such notice * * * shall give to the person receiving the service * * * written notice, * * * calling the attention of that person to the existence of such provision in the contract.” (Italics supplied.)
Firstly, by accepting the agreed upon facts, we proceed directly to the essence of the problem. Defendant admittedly did not give the notice required by the said statute, which is *752 consistent with its contention that the said statutory provision is inapplicable hereto. Furthermore, it is to be noted that subdivision 11 of section 1-203 of the General Obligations Law expressly provides that said section 5-903 applies to contracts executed or renewed after October 1, 1961.
Clearly we are then confronted with the ultimate issue, namely: does this type of real estate management and rental agency agreement fall within the definition of section 5-903 of the General Obligations Law? If it does, the defendant as the party ‘ ‘ furnishing the service, maintenance or repair ’ ’ had the obligation to give the statutory notice which it admittedly did not do. If it does not, this agreement is in effect up to and including the 31st day of July, 1970.
There appears to be only a handful of cases in this or any other jurisdiction on the point.
In Telephone Secretarial Serv. v. Sherman (28 A D 2d 1010) it was held that an agreement to provide telephone answering service for a year and to be automatically renewed from year to year unless canceled was within the scope of section 5-903 and did not automatically renew in the absence of the required statutory notice. The court found that the agreement was not for the 1 ‘ maintenance or repair of real or personal property, ’ ’ but was a “ service ” to or for personal property with the defendant being “ the person receiving the service,” as defined by the statute.
On page 1011, the court held: ‘1 The words 1 service, maintenance or repair ’ in section 5-903 are to be generously read in order that their scope will engage the variegated evil the statute was intended to meet ”. The court thereupon concluded that recording and relaying messages was a “service” as contemplated by the statute.
Judge Morrison, the one who rendered the original decision in the District Court of Nassau County, carefully chronicled the history of the statute, including the predecessor statute, section 399-a of the General Business Law, which is a useful guide herein. This decision is reported in 49 Misc 2d 802.
On page 804 thereof, Judge Morrison, in quoting the legislative history, states ‘ ‘ ‘ the automatic renewal clause was eliminated from the landlord leases (see Real Property Law, § 230). It should be outlawed in business contracts, too.’ (N. Y. State Legis. Ann., 1953, pp. 61-62).” He then cites other language to illustrate that the instant statute was intended to apply to “ service-type contracts.”
The Governor’s message approving the bill stated that this statute supplements the provisions of law now applicable to *753 leases of real or personal property and provides protection against ‘ ‘ unwitting automatic renewals of service, maintenance or repair contracts ” (N. Y. State Legis. Ann., 1961, p. 451).
In Mount Vernon Amusement Co. v. Georgian Rest. Corp. (30 A D 2d 823) the court restated the principle that “ the words ‘ service, maintenance or repair ’ are to be generously read ’ ’. The court held the contract in question, namely one to operate, install and service vending machines was clearly encompassed by the statute. (See p. 824.)
Therefore the issue is now resolved in our case into whether or not the contract is a service contract. The defendant contends that the statute was not intended to cover contracts between a principal and his agent which, in effect, is an appointment of an agent to run the principal’s entire business. It further maintains that there is a distinction between a contract for service, maintenance or repair and a contract of agency under which the agent has, among his duties “ the duty to make contracts on behalf of the principal for service, maintenance and repair.”
It is the court’s determination that this is a 11 service ” contract, as contemplated by section 5-903 of the General Obligations Law. The service to be provided consisted of a general management service, namely: collecting rents, disbursing checks, keeping premises maintained and clean, engaging employees and independent contractors, making purchases, renting space, etc. These are services and maintenance. The mere fact that the defendant also acted as agent for plaintiff does not dispute the fact that the agent did itself render services and did maintain the premises, whether through its employees or independent contractors. Many real estate management firms directly engage employees, and some have “ outside ” independent contractors who provide the employees. Obviously this aspect makes no difference in the result.
In a further endeavor to analyze the nature and scope of the activities of the managing agent, reference was made to the management agreement itself, dated July 20, 1943, annexed as an exhibit. It is a simple two-page agreement which further substantiated the conclusion that the activities contracted for by the parties were ‘ ‘ services. ’ ’
“ Par. 2. (a) to furnish the services of its organization for * * * renting, operating and managing * * *, to diligently follow up all inquiries * * *, to show and exhibit vacant * * * to employ the services of other real estate brokerage offices.
*754 “ Par. 2. (b) * * * to advertise the premises.
“ (c) to manage the property and to collect the rents * * * render monthly statements of all rents and other sums collected and disbursements made * * * and remit receipts less disbursements * # #
“(d) * * * to institute any and all legal actions and proceedings.
“(e) * * * to make or cause to be made such repairs and/or alterations as may be advisable or necessary and to purchase such supplies * * *
“ (f) to supervise * * * to hire or discharge employees & &
“ (g) to furnish a copy of the payroll.”
The court is confronted with the argument that this statute was not intended to apply to services rendered to the owner of a large structure like this, a 14-story loft, but only to smaller contracting parties. This contention is rejected for the following reasons:
(1) The statute does not talk in terms of a party furnishing services, maintenance or repair to a large or small owner, consumer, or contracting party. It only says “ service, maintenance and repair.”
(2) Would it actually make any difference in terms of the application of this statute if a party providing a “ service, maintenance or repair ’ ’ had a contract for same with the owner of the largest building in the city as against a contract to provide the same to the owner of a small one-family house? The answer obviously is that the size of the party receiving same or the scope of the services, etc., rendered has nothing to do with the applicability of the statute.
(3) Another compelling argument is the analogy which can be drawn from the statute which served as the model for this one, which was formerly section 230 of the Real Property Law and is now section 5-905 of the General Obligations Law. Section 5-905, in effect, requires the landlord to give notice to the tenant of an automatic renewal clause, similar to the provisions of section 5-903. It is to be noted that section 5-905 does not define or distinguish between large or small landlords or large or small tenants. It applies to leases for real property containing automatic renewal clauses. If either section 5-903 or section 5-905 were intended to make other distinctions than those expressly set forth in the statutes themselves, this will be the province of the Legislature — not the judiciary.
I therefore have concluded that' what the Legislature sought to accomplish in cases where agreements for services, repairs *755 or maintenance were made was to eliminate the evil of automatic renewals, without notice, in specific cases. Such legislation covers the case at bar.
I therefore grant the plaintiff’s motion for summary judgment in the sum of $3,852.58, with interest from October 1, 1969, dismissing the defense and counterclaim on the grounds that there are no triable issues of fact and no valid defense to the complaint here.