Henderson W. Morrison, J.
By contract dated January 4, 1963 the defendant subscribed to the plaintiff's telephone-answering service and agreed to pay the rate of $35 per month for 250 messages, plus added charges for additional messages. The agreement provides: ‘1 This agreement shall continue for a year, and shall be automatically renewed from year to year *803 thereafter unless cancelled by either party by written notice, thirty (30) days before the end of any years service. In the event that the contract is renewed for the second year, the rate shall remain the same.”
The defendant continued to use and has paid for the plaintiff’s services from the date of contract up to and including March 30, 1965. It is admitted that on March 11, 1965, defendant notified plaintiff to discontinue service as of March 30, 1965.
In this action, plaintiff now claims that according to the terms of the contract, it is owed the sum of $35 per month for the months of April, May, June, July and August, 1965, or a total of $175.
Defendant now moves for summary judgment, dismissing the complaint, charging that the alleged contract is unenforcible for the reason that no notice was given to the defendant calling his attention to the aforesaid automatic renewal clause as required by section 5-903 of the General Obligations Law, (formerly General Business Law, § 399-a).
The plaintiff does not deny the failure to give such notice, but asserts that section 5-903 of the General Obligations Law has no application to this case, since telephone-answering service is not a service to or for any real or personal property.
“ 2. No provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract sei'vice, maintenance or repair of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service, maintenance or repair, unless the person furnishing the service, maintenance or repair, at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.”
Whether section 5-903 of the General Obligations Law covers or was intended to cover contracts of this nature can best be ascertained from a study of its legislative history and the history of those statutes from which it is derived.
By chapter 701 of the Laws of 1953, the New York Legislature added section 399 to the General Business Law of this State. In sponsoring this bill, Hon. Anthony P. Savarese stated in a memorandum:
*804 “ This bill seeks to protect all businessmen from fast talking sales organizations armed with booby traps which they plant in business contracts involving equipment rentals. * * *
“ It is about time that small business people in this State were protected against high pressure sales representatives who trick businessmen into prolonging rentals beyond the agreed-upon expiration date. * * *
££ Undoubtedly, many unsuspecting small businessmen are taken in by such evil practices which- — -taken collectively — are costing those who cannot afford it many thousands of dollars yearly. The automatic renewal clause was eliminated from landlord leases (see Real Property Law, § 230). It should be outlawed in business contracts, too.” (N. Y. State Legis. Ann., 1953, pp. 61-62.)
On November 30, 1960, the Court of Appeals, in Feder v. Caliguira (8 N Y 2d 400), refused to apply the statute to an automatic renewal clause contained in a contract involving an agreement to place a juke box in the defendant's premises and to share the profits therefrom.
The following year (1961), at the instance of the New York State Attorney-General, the Legislature enacted chapter 507 of the Laws of 1961, adding section 399-a to the General Business Law. This is now section 5-903 of the General Obligations Law.
A memorandum submitted by the Attorney-General sponsoring this law is a compelling indication of both its purpose and the construction to be given its language.
“ This bill would provide that automatic renewal provisions contained in service-type contracts shall be unenforceable by the one furnishing the service unless the recipient of the service is reminded of the presence of the renewal feature by timely notice.
“ Specifically, the measure would require the contractor furnishing maintenance, or repair services to call attention of the recipient to the existence of the automatic renewal provisions * * *
££ The measure is designed to correct an oppressive situation which has frequently confronted small businessmen who unwittingly find themselves ££ married ” to contracts for sign maintenance, laundry and linen supplies and a variety of other services. * * *
“ The bill will aid the small businessman who on many occasions in the past has been compelled to continue doing business with a particular company for an extended period of months or years despite dissatisfaction with the cost or quality of the service or the fact that he may no longer require the service.” (Italics supplied.) (N. Y. Legis. Ann., 1961, p. 52.)
*805 The Governor’s message approving the bill stated: “ This bill supplements the provisions of law now applicable to leases of real or personal property (Real Property Law, § 230; General Business Law, § 399). It would provide a necessary protection to consumers against unwitting automatic renewals of service, maintenance or repair contracts. Accordingly, it should be approved.” (N. Y. Legis. Ann., 1961, p. 451.)
It should be noted that neither the message of the Governor nor that of any Attorney-General gives any indication that the law was intended to be confined to contracts involving personal or real property. On the contrary, the Attorney-General refers to “ service-type contracts” and to contracts involving “a variety of other services. ’ ’
The case of Peerless Towel Supply Co. v. Triton Press (3 A D 2d 249) sustained the applicability of section 399 of the General Business Law (now General Obligations Law, § 5-901) to the automatic renewal provisions of a contract to supply a cabinet and towels to the defendant. The language of the Appellate Division in that case is appropriate (p. 251):
“ The statute (§ 399), being of a remedial nature, should be given a construction broad enough to cover this arrangement. Indeed, it would appear that this very controversy was what the sponsor of the statute was hoping to avoid. * * *
‘ ‘ The instant case involved precisely the sort of situation which section 399 was designed to cover, and nice distinctions as to whether this is a ‘ service ’ should not derogate from the fact that there was sufficient in the nature of the arrangement and the words of the agreement to bring these cases within the scope of section 399. ’ ’
In Feder v. Caliguira, pp. 405-406 (supra) the Court of Appeals expressed its reason for not applying section 399 of the General Business Law to the contract in that case involving a bailment of a juke box and sharing of profits as follows:
“ The situation which the Legislature must have had in mind was the typical lessee of personal property, in which the owner of the articles transfers their use and possession in return for a stipulated rental that the lessee is under a continuing obligation to pay. (See, e.g., Peerless Towel Supply Co. v. Triton Press, 3 A D 2d 249.) The legislature was concerned with the unfairness of binding the lessee to a ‘ renewed ’ term and forcing him to pay the rental for such renewed term even though he may not have known about the automatic renewal clause or may have forgotten about it.”
“ The agreement here under consideration imposes no such onerous financial burden or obligation upon the defendant. The *806 plain fact is that he made no promise to pay any rental or any other sum, and this factor alone differentiates the ‘ lease ’ covered by section 399 from the business arrangement before us.”
It should be noted in the case at bar that the agreement herein does in fact fix a specific and continuing obligation upon the defendant during the renewed term.
While the major portion of the plaintiff’s services under the contract might well consist of intangible services in the form of receiving’ messages from other persons and ultimately transmitting these oral, intangible messages to the defendant, there is involved in this function the use of telephone and telephone lines located at the defendant’s place of business, as well as telephones, telephone lines and a switchboard located at the plaintiff’s place of business. Does not this contract call upon the plaintiff to service and maintain these facilities, not in the sense of repairing them, but in the sense of operating and using them for the purpose for which they are intended to be used? Does not this contract, in effect, include subleasing the switchboard and facilities in plaintiff’s premises to the defendant for a fixed charge per month, thus bringing the contract within the purview of section 5-901 of the General Obligations Law (formerly General Business Law, § 399) as well? I believe that it does. This conclusion is further supported by the dicta in the case of Melodies, Inc. v. La Pierre (4 A D 2d 982) involving a contract to supply coin-operated music service. “ Section 399 of the General Business Law may properly be held to be applicable to a service contract of the type here involved.”
I am of the opinion that the clause involved in this contract falls within the intended restrictions of both section 5-903 and section 5-901 of the General Obligations Law.
The defendant’s motion for summary judgment dismissing the complaint is granted.