## The ASSOCIATED PRESS

v.

## William E. BERGER d/b/a Radio Station KRME, and Radio Medina, Inc., d/b/a Radio Station KRME.

### No. SA 78 CA 1.

United States District Court,
W. D. Texas,
San Antonio Division.

Nov. 6, 1978.

Mark J. Cannan, San Antonio, Tex., Allan K. DuBois, San Antonio, Tex., for plaintiff.

Burrell D. Johnston, Austin, Tex., Hugh H. Meyer, Hondo, Tex., for defendant.

## MEMORANDUM OPINION

SPEARS, Chief Judge.

This is a suit by the Associated Press against William E. Berger d/b/a Radio Station KRME and Radio Medina, Inc. d/b/a Radio Station KRME for breach of contract resulting from the defendants' failure to pay for plaintiff's wire service. The Associated Press is a New York corporation. The defendant William E. Berger is a citizen of Texas and the defendant Radio Medina, Inc. is a Texas corporation. Upon the trial of this case, the parties presented all of the material facts by stipulation, with the exception of a dispute as to the proper amount in controversy. After due deliberation, it is the opinion of the Court that although the jurisdictional question must be resolved in favor of the plaintiff, judgment should nevertheless be entered for the defendant.

■ The plaintiff has claimed as damages only the amounts it says have or will become due and payable subsequent to the initial five year contract period, i. e.—after March 1, 1975. As a result of the alleged default, the plaintiff is seeking damages at law in the amount of $10,130.94. Even

though the defendants have asserted a right to certain offsets against the plaintiff's claim, it is well established that the sufficiency of the amount in controversy is to be determined by the amount claimed in good faith by the plaintiff. *Jones v. Landry,* 387 F.2d 102 (5th Cir. 1967).

■ Since the defendants' calculation of the amount in controversy would have been less than the jurisdictional amount required in this diversity case, the parties were directed to advise the Court as to this jurisdictional question by order entered on October 12, 1978. To warrant dismissal for want of subject matter jurisdiction, it must appear to a "legal certainty" that the claim asserted is for less than the jurisdictional amount. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). After having reviewed the responses of the parties to the Court's *sua sponte* inquiry into this threshold issue of subject matter jurisdiction, the Court is of the opinion that the amount in controversy is in excess of ten thousand dollars ($10,000.00).

■ It appears to the Court that the plaintiff's claim was made in good faith, and that the defendants' challenge to the amount in controversy fails to establish with the requisite "legal certainty" the failure of plaintiff's complaint to demonstrate the requisite jurisdictional amount.

There are two questions presented which the Court views as determinative of the merits of this suit. First, the Court must determine whether the law of Texas or New York should be applied according to the governing conflict of laws principles. Second, if the law of New York applies, it must be determined whether the automatic renewal term of the contract is rendered unenforceable by statute.

When this case came on for non-jury trial on October 12, 1978, certain stipulated facts were presented to the Court. The contract itself has been admitted pursuant to stipulation. Basically, the contract provided that the Associated Press would furnish news service to the defendants for broad-cast over their radio station facilities. The defendants agreed to pay a weekly assessment in return for the service. The contract was to last for an initial period of five years. Thereafter, the contract was to be subject to automatic renewal for a like term unless notice of termination was given as specified in the contract.

During June and July of 1974, the plaintiff was given oral indication of the defendants' intent to terminate the agreement at the end of the initial period. On September 9, 1974, defendant gave written notice to the plaintiff of the defendants' intention to terminate the agreement at the end of the first term. The defendants paid for plaintiff's service pursuant to the agreement through March 1, 1975, on which date Radio Station KRME ceased making use of the services provided by the Associated Press. Thereafter, on August 12, 1975, plaintiff considered defendants in breach of the contract and suspended news service to the radio station.

### I. CONFLICT OF LAWS

■ Since this suit has been brought pursuant to this Court's diversity jurisdiction, the Texas rules concerning conflict of laws will govern the resolution of the first question presented. *Klaxon Co. v. Stenor Electric Mfg. Company,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ Texas courts follow the traditional rule of applying the law of the place of performance or the law of the place where the contract was made, in the absence of a contrary manifestation by the parties. *Dailey v. Transitron Electronic Corp.,* 475 F.2d 12 (5th Cir. 1973); *Austin Building Co. v. National Union Fire Ins. Co.,* 432 S.W.2d 697, 701 (Tex.1968).

In *Diaz v. Southeastern Drilling Co. of Argentina, S. A.,* 324 F.Supp. 1, 4 (N.D.Tex. 1969), *aff'd,* 449 F.2d 258 (5th Cir. 1971), the Court held:

> "Under Texas conflict of laws rules, the validity, interpretation, and effect of an assignment, and of contracts generally, are determined by the law of the place

where the contract is made. *Burtis v. Butler Bros.,* Tex.Civ.App., 228 S.W.2d 938; *Bernard Gloeckler Co. v. Baker Co.,* Tex.Civ.App., 52 S.W.2d 912."

See also *Lipschutz v. Gordon Jewelry Corporation,* 373 F.Supp. 375, 384–386 (S.D. Tex.1974). Each of these two cases also mentions the modern trend toward applying the law of the state having the most significant relationship to the transaction and the parties. *Restatement (Second) of Conflict of Laws,* §§ 6, 188.

■ In determining which forum has the more significant relationship to the transaction, a court is to consider the various contacts which the parties and the contract may have with each prospective forum.[1] In the instant case, the plaintiff has described itself as a non profit membership corporation organized and existing under the laws of the State of New York. Although the contract required weekly payments to be made to the plaintiff at its offices in New York, it also required the plaintiff to install automatic teletype equipment and deliver its news service to the defendants at their place of business in Texas. The principal contract appears to be a standard printed form drafted by the New York corporation. The agreement specifies that it is to be controlled by the bylaws of the plaintiff corporation. Although there is some disagreement as to where the "most significant" acts of performance were due to be made, there is no genuine dispute that the contract did require various acts of performance in both Texas and New York. It is therefore submitted that the recital in the first sentence of the contract that the agreement was made in the State of New York should be controlling.

■ It is true that when a contract is made in one state to be entirely performed in another state it is generally governed by the law of the place of performance. *Ramirez v. Autobuses Blancos Flecha Roja, S. A. De C. V.,* 486 F.2d 493, 496 (5th Cir. 1973); *Backar v. Western States Producing Company,* 382 F.Supp. 1170, 1173 (W.D.Tex. 1974). However, where a contract is to be performed in more than one place, the place of making will govern in the absence of an agreement to the contrary. *Ramirez v. Autobuses Blancos Flecha Roja, S. A. De C. V., supra; Hatchett v. Williams,* 437 S.W.2d 334, 338 (Tex.Civ.App.1968, writ ref. n. r. e.) *cert. denied,* 396 U.S. 963, 90 S.Ct. 437, 24 L.Ed.2d 427. Since the instant contract was to be performed in both Texas and New York and it recites its place of making as being in New York, it is the opinion of the Court that the issue as to where the "most significant" acts of performance were due to be made becomes immaterial. See *Crouch v. Crouch,* 566 F.2d 486, 488 (5th Cir. 1978). It is accordingly the holding of the Court that the interpretation, construction, and validity of this contract is to be governed by the laws of New York.

## II. ENFORCEABILITY OF THE AUTOMATIC RENEWAL PROVISION

The validity of the plaintiff's cause of action depends entirely upon the enforceability of the automatic renewal term of the contract. The plaintiff herein has sought relief only for payments alleged to be due after the end of the primary term of the contract, which it says have accrued as a consequence of the automatic renewal of the contract on or before March 2, 1975. It is the defendants' contention that this extension of the contract beyond its primary term is unenforceable by virtue of a New York statute.

Paragraph 4 of the parties' agreement provided that the contract would be automatically renewed for a like period of time

---

1.  Section 188, *Restatement (Second) of Conflict of Laws* (1971), provides in part as follows:
    "(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
    (a) The place of contracting,
    (b) The place of negotiation of the contract,
    (c) The place of performance,
    (d) The location of the subject matter of the contract, and
    (e) The domicil, residence, nationality, place of incorporation and place of business of the parties."

unless terminated by either party " . . . by written notice to the other by certified mail, not less than six months prior to the end of such period."

The contract became effective on March 1, 1970. The written notice for termination required by the contract was to be not later than September 1, 1974; however, as above indicated, the written notice did not come until September 9, 1974.

■ Section 5–903, *N.Y.Gen.Oblig.Law (McKinney)*, provides in pertinent part as follows:

"2. No provision of a contract for service . . . to or for any . . . personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service . . . gives notice to the person furnishing such contract service . . . of his intention to terminate the contract at the expiration of such term, shall be enforceable . . . unless the person furnishing the service . . . at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give . . . written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract."

Although the plaintiff contends that the instant contract does not come within the purview of this statute, this contention must be rejected in light of the statute's broad remedial purposes. *Telephone Secretarial Service v. Sherman*, 49 Misc.2d 802, 268 N.Y.S.2d 453 (Dist. Ct., Nassau County, Third Dist. 1966), *aff'd. per curiam*, 52 Misc.2d 901, 277 N.Y.S.2d 45 (App.Term, 1966), *aff'd*. 28 A.D.2d 1010, 284 N.Y.S.2d 384 (1967).

■ It is apparent from the uncontroverted affidavits submitted in support of the defendants' motion for summary judgment that notice was not given to the defendants prior to the alleged automatic renewal pursuant to Section 5–903, *N.Y.Gen. Oblig.Law (McKinney)*. Consequently, the Court holds that the automatic renewal provision of the contract is unenforceable.

Since the automatic renewal term is unenforceable, the plaintiff's cause of action must likewise fail. Judgment will accordingly issue in favor of the defendants by order entered on this date.