**Barry FEINSTEIN et al., Plaintiffs,**

v.

**Albert B. LEWIS, Superintendent of Insurance of the State of New York, et al., Defendants.**

**No. 79 Civ. 2204 (HFW).**

United States District Court, S. D. New York.

Oct. 12, 1979.

Guggenheimer & Untermyer, New York City, for plaintiffs; David M. Brodsky, Joan Ross Sorkin, Ellen Doskow, Charles Fastenberg, New York City, of counsel.

Insurance Department of the State of New York, New York City by Sidney B. Glaser, Associate Counsel, New York City, for defendant Lewis.

Plan Benefits Security Division, U. S. Dept. of Labor, Washington, D. C. by Monica Gallagher, Associate Sol., Norman P. Goldberg, Counsel for Litigation, Edward A. Scallet, Atty., Washington, D. C., for defendant Marshall.

## OPINION

WERKER, District Judge.

This action for injunctive and declaratory relief raises the issue of whether an employee welfare plan established pursuant to a collective bargaining agreement between a public employer and a union for the benefit of public employees is exempt from the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*[1] There being no material issues of fact, and the Court having duly considered all of the legal arguments, judgment is rendered for the defendants.

---

1. Title I of ERISA governs the "Protection of Employee Benefit Rights" and is codified at 29 U.S.C. §§ 1001–144. Title II amended certain provisions of the Internal Revenue Code of 1954 and is consequently codified in the tax title of the United States Code. *See, e. g.,* 26 U.S.C. §§ 401–04, 410–15, 6057–59. Title III covers jurisdiction, administration and enforcement and is codified at 29 U.S.C. §§ 1201–42. Title IV governs the termination of pension plans and is codified at 29 U.S.C. §§ 1301–81.

# 1258

## BACKGROUND

Plaintiffs are trustees of four employee welfare funds[2] (the "Plans") which were established in accordance with collective bargaining agreements entered into between Local Union 237 (the "Union"), affiliated with the International Brotherhood of Teamsters, and each of four employers, the Town of Babylon, the Town of Islip, the Plainview-Old Bethpage Central School District, and the Brentwood School District. All of the employees covered by the four Plans are employed by one of these towns or school districts, and the Plans are exclusively funded by contributions from the employers. Each Plan is administered by a separate board of trustees comprised of six members,[3] three of whom are appointed by the Union and three of whom are appointed by the respective employer. In the event of a deadlock between the Union and employer trustees, the matter is submitted to arbitration.

In 1973, each of the Plans filed a registration statement with the Insurance Department of the State of New York pursuant to the provisions of the New York State Insurance Law. Thereafter, the Plans filed periodic reports and continued to comply with the state requirements. In 1975, however, ERISA came into effect and each of the Plans ceased complying with the Insurance Law and began complying with the reporting, disclosure and auditing provisions of ERISA.

In March 1975, plaintiffs sought an advisory opinion from the United States Department of Labor as to whether the Plans were exempt from or governed by ERISA. Plaintiffs did not receive a response to their request.

In December 1978, the New York Insurance Department notified the Plans that they had not been complying with the Insurance Law and requested that annual reports for the years 1976, 1977 and 1978 be filed "without delay." In response, plaintiffs advised the Insurance Department that the Plans had been complying with ERISA, but the Insurance Department nevertheless continued to insist upon compliance with the New York statutory scheme.

On March 7, 1979, plaintiffs again requested an advisory opinion from the Department of Labor. Plaintiffs did not receive a response, and after the commencement of this lawsuit, the request was withdrawn.

On April 10, 1979, and again on April 25, 1979, the Insurance Department informed plaintiffs that it would commence proceedings against the trustees of the Plans to fine them up to $2,500 each and/or to remove them from office.

On April 27, 1979, plaintiffs filed the instant complaint naming as defendants Albert B. Lewis, Superintendent of Insurance of the State of New York, and Ray Marshall, United States Secretary of Labor. The complaint seeks a judgment declaring Article III-A of the New York State Insurance Law illegal and inoperative as to plaintiffs, compelling defendant Marshall to

---

**2.** An "employee welfare plan" is distinguishable from an "employee pension plan." The former provides for such benefits as medical, accident, disability, unemployment and vacation benefits, while the latter provides for retirement or deferred income. The term "employee benefit plan" refers to an employee welfare plan or an employee pension plan or a plan which provides both welfare and pension benefits. See ERISA §§ 3(1), (2), (3), 29 U.S.C. §§ 1002(1), (2), (3).

**3.** Plaintiff Barry Feinstein, chairman of the Plans, is a Union-designated trustee of each of the four boards of trustees. The other trustees are also plaintiffs in this action. They are: for the Babylon fund, Frank Scarpinato and Fred Kennedy, appointed by the Union, and Mitchell Rothberg, Edward Waldman and Patrick Barton, appointed by the employer; for the Brentwood fund, Fred Salvatore and Jack Farneti, designated by the Union, and Maureen Belanger, Frank Mauro and Gerard A. Arthus, designated by the employer; for the Islip fund, Scarpinato and Farneti, appointed by the Union, and Thomas Dobbs, William Brotherton, Jr., and Alan Schneider, appointed by the employer; and for the Plainview-Old Bethpage fund, Ralph Prossimo and Edward Cervo, designated by the Union, and Alvin Delman, Joseph Blum and Harvey Brickman, designated by the employer. Affid. of Barry Feinstein, sworn to April 25, 1979, at ¶¶ 1, 5.

enforce the provisions of ERISA and to issue regulations and advisory opinions defining the coverage of ERISA, and enjoining defendant Lewis from enforcing the provisions of Article III–A of the Insurance Law against the Plaintiffs.

On April 27, 1979, plaintiffs sought by order to show cause an order temporarily restraining defendant Lewis from commencing or maintaining any legal or administrative action to remove or fine the plaintiffs. With the consent of defendant Lewis, temporary relief was granted pending resolution of the merits of this suit.

In June 1979, the Department of Labor responded to plaintiffs' request, which had been withdrawn, for an advisory opinion. In a letter addressed to plaintiffs' counsel, the Department of Labor concluded that the subject Plans were "governmental plans" within the meaning of section 3(32) of ERISA, 29 U.S.C. § 1002(32), and therefore excluded from coverage under Title I of ERISA by virtue of section 4(b)(1), 29 U.S.C. § 1003(b)(1). The letter is reprinted at 244 Pens. Rep. (BNA), at R–3 (1979).

In July 1979, the defendant Marshall moved to dismiss the complaint as to him on the grounds of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## DISCUSSION

ERISA sets forth a comprehensive scheme for the protection of employee benefit plan participants and their beneficiaries. The provisions of Title I of ERISA apply generally to "any employee benefit plan . . . established or maintained (1) by any employer . . .; or (2) by any employee organization . . .; or (3) by

both." ERISA § 4(a), 29 U.S.C. § 1003(a). Specifically excluded from coverage under Title I of ERISA, however, is an employee benefit plan that is also a "governmental plan," ERISA § 4(b), 29 U.S.C. § 1003(b), which is defined as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing. . . ." ERISA § 3(32), 29 U.S.C. § 1002(32).[4]

In the instant suit, it is undisputed that the Plans are employee benefit plans within the meaning of section 4(a) of ERISA, 29 U.S.C. § 1003(a), and that the employees covered by the Plans are employees of "the government of [a] State or political subdivision thereof, or [of an] agency or instrumentality of any of the foregoing." Additionally, it cannot be disputed that the New York State Insurance Law is preempted by ERISA to the extent that the state statute purports to affect employee benefit plans covered by Titles I and IV of ERISA. ERISA § 514(a), 29 U.S.C. § 1144(a).[5] See *Azzaro v. Harnett,* 414 F.Supp. 473, 474 (S.D.N.Y.1976), aff'd mem., 553 F.2d 93 (2d Cir.), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). Hence, the only issue before the Court is whether the Plans are plans "established or maintained" by governmental bodies.

"The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). As noted above, ERISA defines a "governmental plan" as "a plan established or maintained for its employees" by a governmental body or instrumentality. The

---

**4.** It must be noted that "governmental plans" are not excluded from coverage under all the provisions of ERISA. Governmental employers maintaining pension plans, for example, must file annual information returns as required by section 1031 of ERISA, 26 U.S.C. § 6058. *State of California v. Blumenthal,* 457 F.Supp. 1309, 1316–17 & n. 14 (E.D.Cal.1978). *See generally* Leibig & Kalman, *Federal Policies Toward State and Local Pensions,* Employee Benefits J., Fall 1978, at 16, 20–21, 23.

**5.** Section 514(a) provides in pertinent part: "[T]he provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. . . ." 29 U.S.C. § 1144(a).

use of the conjunction "or" indicates that a plan is a governmental plan if it is *either* established *or* maintained by a government body for its employees.[6]  *See United States v. Astolas*, 487 F.2d 275, 279 (2d Cir. 1973), *cert. denied*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974).

Plaintiffs contend that the Plans are neither established nor maintained by governmental bodies.  Because the Plans were established pursuant to collective bargaining agreements between the employers and the Union rather than by statute, ordinance, constitution or other unilateral governmental action, plaintiffs claim that the Plans were not "established" by governmental bodies.  And, because the Plans are administered by boards of trustees composed of both employer and Union trustees, with deadlocks to be resolved by arbitration, plaintiffs argue that the Plans are not "maintained" by the towns and school districts.

I disagree in both respects.  I do not believe that Congress intended the words "established" and "maintained" to be so narrowly construed.  The mere fact that a town or school district sets up a benefit plan for its employees as a consequence of negotiations and collective bargaining rather than because of some unilateral action or decision simply does not lead to the conclusion that the plan was not "established" by the town or school district.  Although they did so in conjunction with the Union,[7] the towns and school districts involved herein did nevertheless "establish" the Plans.  Moreover, there can be no doubt that the Plans are "maintained" by the towns and school districts for their employees.  Although the Plans are jointly administered by the Union and the employers through the boards of trustees, they are exclusively funded—and hence "maintained"—by the employers.[8]

The legislative history of ERISA provides further support for the conclusion that the Plans are governmental plans within the meaning of section 4(b), 29 U.S.C. § 1003(b).  ERISA was enacted primarily to curb abuses in the administration of *private* employee welfare and pension plans.  ERISA was preceded by the Welfare and Pension Plan Disclosure Act of 1958, 29 U.S.C. § 301 *et seq., repealed*, ERISA § 111, 29 U.S.C. § 1031, certain provisions of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, and certain provisions of the Internal Revenue Code of 1954, 26 U.S.C. §§ 401–04, 501–03.  *See*

---

**6.**  Plaintiffs contend that notwithstanding the use of the conjunction "or," a plan must be *both* established *and* maintained by a governmental body in order to fall within the exemption, and rely on Department of Labor advisory opinions to that effect.  *See* Plaintiffs' Mem. in Support of Application for Temporary Restraining Order and Preliminary Injunction, at 11–12.  These opinions, however, are not controlling because they were only rendered in situations where it was clear that a plan was established *and* maintained by a governmental body.  *See* Salisbury, *Public Employee Benefit Plan Reform*, Employee Benefits J., Fall 1977, at 9.

It should be pointed out that the definition of a "governmental plan" is inconsistently defined in ERISA.  *Compare* ERISA § 3(32), 29 U.S.C. § 1003(32) ("established or maintained"), *with* IRC § 1015(d), 26 U.S.C. § 414(d) ("established and maintained"), *and with* ERISA § 4021(b)(2), 29 U.S.C. § 1321(b)(2) ("established and maintained").

**7.**  Each of the trust agreements at issue herein contains the statement: "The Union and the Town [or School District] hereby create and establish with the Trustees a trust  .  .  .  ." Exhs. A–D, annexed to affid. of Barry Feinstein, sworn to April 25, 1979.

**8.**  A similar result would undoubtedly be reached under the Labor Management Relations Act (the "LMRA"), 29 U.S.C. §§ 141–188.  In *Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355 (3d Cir. 1976), the third circuit held that state and local government employees were excluded from coverage under the LMRA.  529 F.2d at 1362–63.  Expressly included under the coverage of the LMRA are trust funds administered by an equal number of employer and union trustees, with deadlocks to be resolved by a neutral trustee.  *See* 29 U.S.C. § 186(c).  If the employer involved with such a trust fund is a governmental body, it would appear on the basis of the *Crilly* case that the fund would be excluded from the ambit of the LMRA, notwithstanding the involvement of the union in the fund's administration.

*generally* H.R.Rep. 93–533, 93d Cong., 1st Sess. (1974), U.S.Code Cong. & Admin. News, p. 4639. Because of the inadequacies of these acts in protecting the rights of private employees, comprehensive reform of the private pension system was deemed necessary by the legislature. *Id.* The Plans at issue herein do not, of course, involve private employees.

Plans established by state and local governments are generally excluded from coverage under ERISA because of concerns of federalism. In a summary of the major provisions of a predecessor bill, Senator Lloyd Bentsen commented that: "State and local governments must be allowed to make their own determination of the best method to protect the pension rights of municipal and state employees. These are questions of state and local sovereignty and the Federal Government should not interfere." 1 *Legislative History of the Employee Retirement Income Security Act of 1974* 220 (1976) (hereinafter cited as *Legislative History*). Plaintiffs urge the Court to hold that a plan established by a governmental body for its employees is a "governmental plan" if it is established pursuant to statute, ordinance or constitution, but not if it is established pursuant to collective bargaining and negotiations. This distinction, in my view, is an untenable one; the holding urged by plaintiffs would frustrate Congress' intent to refrain from interfering with the manner in which state and local

governments operate employee benefit systems. Public employers may be reluctant to institute employee benefit plans pursuant to collective bargaining and negotiations if such plans are subject to ERISA while plans established by statute, ordinance or constitution are not.

Discussions in the congressional reports and hearings on the question of the exclusion of governmental plans are replete with such general references as "public employee plans," "public sector plans," "State and local public employee funds" and "plans sponsored by State and local governments." [9] *See, e. g.,* H.R.Rep. 93–779, 93d Cong., 2 Sess. 46 (1974); 3 *Legislative History* 4685 (remarks of Representative Broyhill); *Welfare and Pension Plan Legislation: Hearings on H.R. 2 and H.R. 462 Before the General Subcomm. on Labor of the House Comm. on Education and Labor,* 93d Cong., 1st Sess. 222, 368, 467, 649 (1973). In commenting on the fact that a provision including state and local public employee benefit plans under the ambit of the reporting and disclosure sections of H.R. 2 had been dropped from the final draft, Representative John H. Erlenborn stated that "the Committee missed the opportunity . . . to foster honesty in government and to give *public employees* the comprehensive protections and guarantees . . . deem[ed] vital to private employees." H.R. Rep. 93–553, at 44, U.S.Code Cong. & Admin.News, p. 4668 (emphasis added). *See*

---

**9.** Plaintiffs contend that these general references are merely "passing references and oblique remarks" which "do not indicate the characteristics of what constitutes a government plan." Plaintiffs further point to the fact that many if not all of these statements were made in the context of pension plans and thus argue that these statements have little bearing on employee welfare plans. Plaintiffs' Reply Mem. of Law, at 6. These arguments are unpersuasive. First, plaintiffs themselves rely on similar remarks in the congressional report and hearings, including statements addressed specifically to pension and other retirement plans. *See id.* at 2–5. Second, ERISA does not distinguish between employee pension plans and employee welfare plans in excluding governmental plans from coverage under Title I of ERISA. Rather, the term "employee benefit plans," which encompasses both pension and welfare

plans, is used. 29 U.S.C. §§ 1002(3), 1003(b)(1). *See* footnote 2 *supra.*

Most attempts to ascertain congressional intent by examining legislative history are but "speculative inquir[ies] into what Congress would have intended had the issue [now in question] been considered." *Crilly v. Southeastern Pennsylvania Transportation Authority,* 529 F.2d at 1361. In the instant case, the fact that members of Congress frequently referred to "public employee plans" and "public employee funds" in discussing the governmental plan exclusion is a good indication that Congress had public employees in mind rather than plans exclusively established and exclusively maintained by governmental bodies. Had Congress considered the issue before the Court, it probably would have concluded that plans similar to the ones at issue herein are indeed "governmental plans."

*id.* at 9, 43. These discussions clearly demonstrate that Congress, in exempting governmental plans, was concerned more with the governmental nature of public employees and public employers than with the details of how a plan was established or maintained. *See Fleck v. Spannaus,* 449 F.Supp. 644, 654, (D.Minn.1977), *rev'd on other grounds sub nom. Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978) (ERISA excluded "public employees" because the legislature determined the need for protection was greatest in private industry, citing 29 U.S.C. § 1003(b)(1)) (dictum); *Standard Oil Co. v. Agsalud,* 442 F.Supp. 695, 703–04 n. 9 (N.D.Cal.1977) ("[R]eferences [in legislative history of ERISA] to 'private' plans were intended to refer to plans which are maintained neither by the government nor for government employees. . . . Private plans contrast with public plans, as in the case of the exemption for government plans for employees in the public sector . . .") (dictum); Comment, *The Employee Retirement Income Security Act of 1974: Policies and Problems,* 26 Syracuse L.Rev. 539, 549 n. 70 (1975) ("Governmental plans include those established for the employees of federal, state and local governments.").

The third circuit has observed, in a labor law context, that "[w]hen Congress has decided to extend coverage of . . . federal labor legislation to public employees, it has specifically amended the definition of employer to include states and political subdivisions. Another technique Congress has chosen in dealing with employees in the public sector is to enact a separate statute and model it after [existing law]. Had Congress intended that states and political subdivisions be covered . . . , it could have done so explicitly by means of one of these techniques." *Crilly v. Southeastern Pennsylvania Transportation Authority,* 529 F.2d 1355, 1362 (3d Cir. 1976) (footnotes

omitted). In the instant case, Congress did not expressly include states and political subdivisions in the definition of "employer" in ERISA. *See* ERISA § 3(5), 29 U.S.C. § 1002(5). Additionally, Congress has in fact considered enacting a separate statute to cover public employees. ERISA expressly provides for the study of "retirement plans established and maintained or financed (directly or indirectly) . . . by any State . . . or political subdivision thereof . . . ." ERISA § 3031, 29 U.S.C. § 1231. Last year two members of Congress introduced a bill entitled the Public Employee Retirement Income Security Act of 1978, H.R. 14138, which would impose federal standards for reporting and disclosure, fiduciary responsibility, and plan administration on "all pension plans not otherwise covered under ERISA which are established or maintained for the benefit of the employees of the government of any state or political subdivision . . . ." 207 Pens. Rep. (BNA), at R–19; *see also id.* at A–14. Hence, it is apparent that Congress intended through section 4(b)(1) to exclude public employees from coverage.

## CONCLUSION

In accordance with the above, I hold that the Plans are "governmental plans" exempt from coverage under Title I of ERISA by virtue of section 4(b)(1), 29 U.S.C. § 1003(b)(1). Judgment is rendered for the defendants [10] and the complaint is dismissed in its entirety.[11] Submit judgment on notice within 10 days after entry of this decision.

SO ORDERED.

---

**10.** In light of this result, the defendant Marshall's motion to dismiss the complaint need not be reached.

**11.** The fact that I have found in favor of the defendants should not in any way reflect negatively on the good faith of the plaintiffs in

bringing this action. Faced with an impending state enforcement proceeding, and unable to obtain an advisory opinion from the Department of Labor, plaintiffs had no alternative but to seek relief in federal court.