The ASSOCIATED PRESS, Plaintiff,

v.

J. Winston RIDDLE, d/b/a Benton Broadcasting Company, Defendant.

No. LR–C–79–177.

United States District Court,
E. D. Arkansas, W. D.

July 31, 1980.

Lee J. Muldrow, Wright, Lindsey & Jennings, Little Rock, Ark., for plaintiff.

O. Wendell Hall, Jr., Hall, Tucker, Lovell & Alsobrook, Benton, Ark., for defendant.

## MEMORANDUM AND ORDER

WOODS, District Judge.

### FACTS

The plaintiff in this case is the Associated Press, a news gathering organization locat-

ed in New York, and the defendant is the owner and operator of the Benton Broadcasting Company and Radio Station KBBA. In March of 1972 the plaintiff agreed to provide the defendant with its "news service." The contract recited that the agreement would be effective as of March 12, 1972 and "would continue in effect for a term of three years." It was further stated that the contract would remain in effect for successive five-year terms unless it was terminated by written notice submitted not less than six months prior to the end of the term. While the provisions for written termination appear in clause three of the contract, clause eleven sets forth the additional requirement that any written notice be sent by certified mail, return receipt requested. Clause eleven of the contract also provides that the construction and operation of the contract is to be governed by the laws of the State of New York.

As provided by the contract, the plaintiff furnished its service to the defendant through March of 1975. However, the defendant sent a letter of termination to AP in New York on July 4, 1974. The letter was not sent certified mail nor was a return receipt requested, and the plaintiff denies having received notification of the cancellation. While the defendant admitted that he was aware of and did comply with the six-months cancellation provision, he stated that he was not aware of the clause eleven requirements and had no reason to know that AP had not received notice. The next action taken by the parties occurred on March 11, 1975 when the defendant, assuming that the contract had been properly terminated stopped payments on bank drafts for the amount owed to AP under the agreement. Despite the defendant's cancellation of the bank drafts, AP did not know of the termination until the defendant refused a paper shipment in early June of 1975, and it was not until August or September of 1975 that the plaintiff collected its equipment from the defendant's radio station.

Based upon these facts the plaintiff is claiming that its contract with the defendant was automatically renewed for a five-year term because notice of termination was not sent by certified mail, return receipt requested, as was required by the provisions of the contract. It is therefore argued that the plaintiff is entitled to collect for the five-year term which was automatically renewed.

## CONCLUSIONS OF LAW

■ I. The defendant has contended that the plaintiff's claim is barred by the Wingo Act, Ark.Stat.Ann. § 64–1202. Even though it has been conceded that AP has not qualified to do business in Arkansas, the contracts in question and the nature of AP's business require a finding that interstate commerce is involved and that the Act cannot constitutionally be applied to this case. *White River Broadcasters v. Wm. B. Tanner*, 487 F.Supp. 725 (E.D.Ark. 1979); *Lorain Journal Co. v. United States*, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951).

■ II. Choice of law problems have also arisen in this case. The contract was negotiated in Arkansas between the defendant and AP's Arkansas office. It was not, however, accepted until it was approved by the plaintiff in New York. Furthermore that contract specifically provides for the application of the laws of New York. In gathering and disseminating the news, there was a constant exchange of information between AP's New York headquarters and its regional office. Given this set of facts, the parties' agreement to be governed by New York law should be given effect. Leflar, American Conflicts of Law, § 147 (3rd ed. 1977); *Associated Press v. Berger*, 460 F.Supp. 1003 (W.D.Tex. 1978).

III. Finally it has been suggested that Section 5–903, N.Y. Gen. Oblig. Law (McKinney) bars the plaintiff's action. The pertinent parts of the statute read as follows:

2. No provision of a contract for service . . . to or for any . . . personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service . . .

gives notice to the person furnishing such contract service . . . of his intention to terminate the contract at the expiration of such term, shall be enforceable . . . unless the person furnishing the service . . . at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give . . . written notice, service personally or by certified mail, calling the attention of that person to the existence of such provision in the contract.

An analogous provision is found in Section 5–901, N.Y. Gen. Oblig. Law (McKinney). While this latter section is not applicable since it deals with the lease of personal property, its terms are similar to those found in Section 5–903 and the cases interpreting the statute define the purpose behind the passage of both statutes.

In *Peerless Towel Supply Co. v. Triton Press*, 3 A.D.2d 249, 160 N.Y.S.2d 163 (1957) the court in reviewing the legislative history of Section 5–901 quoted the following language:

This bill seeks to protect all businessmen from fast talking sales organizations armed with booby traps which they plant in business contracts involving equipment rentals * * *. Undoubtedly, many unsuspecting small businessmen are taken in by such evil practices which—taken collectively—are costing those who cannot afford it many thousands of dollars yearly. The automatic renewal clause was eliminated from landlord leases (see Real Property Law, § 230). It should be outlawed in business contracts, too.

See also *Melodies v. La Pierre*, 4 A.D.2d 982, 167 N.Y.S.2d 703 (1957); *Harris v. Adams & Co. Real Estate, Inc.*, 62 Misc. 749, 310 N.Y.S.2d 258 (1970); *Telephone Secretarial Service v. Sherman*, 28 A.D.2d 1010, 284 N.Y.S.2d 384 (1967). In addition to the preceding cases which suggest the liberality with which the New York courts have applied these statutes, a Federal District Court for the Western Division of Texas has construed an identical Associated Press contract and has concluded that Section 5–903 was intended to apply to the agreement. We approve of the Texas Court's interpretation and believe that the New York courts would have given similar effect to the statute. *Associated Press v. Berger, supra.*

Even though the defendant in this case was aware of the six-month termination provision and indeed complied with it, the plaintiff should have proceeded under the statute and notified the defendant that a written termination was required to be sent certified mail, return receipt requested. The statute is clearly designed to protect businessmen from "inadvertent renewal pursuant to an automatic renewal clause by requiring timely and *explicit* notice of the provision for renewal." [Emphasis supplied] *Pine Hill Crystal Spring W. Co. v. Colomby Watch Co.*, 14 Misc.2d 1041, 180 N.Y.S.2d 467 (1958).

Accordingly, we hold that the automatic renewal provision of the contract cannot be enforced and that judgment should be entered for the defendant.