DONALD RUBIN, INC., et al., Appellants, v ROBERT SCHWARTZ et al., Respondents.

First Department, July 19, 1990

APPEARANCES OF COUNSEL

*John Haley* of counsel *(Bickford, Hahn & Hayes,* attorneys), for appellants.

*Jerome Tauber* of counsel *(Sipser, Weinstock, Harper & Dorn,* attorneys), for respondents.

## OPINION OF THE COURT

SMITH, J.

The issue here is whether an agreement retaining plaintiffs to administer defendants' employee benefits plan, which contains a provision for automatic renewal of the agreement, violates section 5-903 of the General Obligations Law or sections 406 and 408 of the Employee Retirement Income Security Act of 1974 (ERISA) (29 USC §§ 1106, 1108).

Defendant Committee of Interns and Residents (CIR) is a union of doctors employed as interns and residents in New York City metropolitan area hospitals. CIR established two employee benefit plans providing health and medical benefits to its members. The first, defendant House Staff Benefits Plan (HSBP), covers doctors employed by public hospitals having a collective bargaining agreement with CIR. HSBP is funded by contributions from the City of New York and other municipalities. The second, the Voluntary Hospitals House Staff Benefits Plan (VHBP), covers doctors employed at voluntary hospi-

tals. Each plan is managed by its own board of trustees members of which are officers of CIR.

In 1979 HSBP retained plaintiff Donald Rubin, Inc., a New York corporation solely owned by plaintiff Donald Rubin, to provide consulting services. Under the terms of a five-year contract executed with HSBP trustees on July 19, 1983, Donald Rubin, Inc. agreed to provide consulting services to HSBP and to serve as the plan administrator.

The contract provided: "This agreement shall commence on July 19, 1983 and terminate July 18, 1988. This agreement shall automatically be renewed for successive additional five year terms unless either party shall notify the other in writing by registered mail of its desire not to extend the agreement at least 180 days prior to the end of the initial term or any successive term."

Donald Rubin, Inc. entered into similar agreements with VHBP and with two other service plans established by CIR.

In June 1988, as a result of a dispute between Rubin and defendant Jonathan House, executive director of CIR, HSBP advised Rubin that HSBP "hereby relieve[s] you personally and Donald Rubin, Inc. of any and all duties, responsibilities and authorities which you may have as Administrator of the Plan". By letter of July 15, 1988 defendant Robert Schwartz, chairman of the board of trustees of HSBP, notified plaintiffs that their services were terminated effective July 18, 1988, the date upon which the first term of the contract was scheduled to end.

Plaintiffs in August 1988 commenced this action for damages against HSBP and its trustees for breach of contract under the automatic renewal provision and against all the defendants for tortious interference with plaintiffs' ability to act as administrator of VHBP and of the two other plans. Plaintiffs make no claim under the initial July 1983 to July 1988 term of the contract.

In lieu of answering, all defendants moved pursuant to CPLR 3211 (a) to dismiss the complaint, raising section 5-903 of the General Obligations Law and sections 406 and 408 of ERISA (29 USC §§ 1106, 1108) as a bar to enforcement of the automatic renewal provision of the contract. Defendants maintain that since the contract was for the furnishing of "service * * * to or for * * * personal property" (General Obligations Law § 5-903 [2]) and plaintiffs failed to give defendants timely notice of its reliance on the automatic renewal provision, the

contract is unenforceable. Defendants also maintain that the contract is unenforceable under ERISA §§ 406, 408 (b) (2) and 29 CFR 2550.408b-2 (c), which prohibit administrative contracts which do not provide for termination upon "reasonably short notice".

The IAS court granted the motion to dismiss on the grounds that the contract fell within the scope of General Obligations Law § 5-903 and that the plaintiff had failed to give the notice required by that section.

The contract was for a five-year period at a specified annual rate of compensation. It is undisputed that HSBP did not give timely notice of its intention not to continue plaintiff's contract as required by the agreement and that plaintiffs failed to give the notice required by General Obligations Law § 5-903. There is also no claim by defendants that the nonrenewal was for cause.

Subdivision (2) of section 5-903 of the General Obligations Law provides: "No provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service * * * gives notice to the person furnishing such * * * of his intention to terminate the contract at the expiration of such term, shall be enforceable * * * unless the person furnishing the service * * * at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service * * * written notice * * * calling the attention of that person to the existence of such provision in the contract."

Restrictions on automatic renewal clauses were first applied to leases of real property. (Real Property Law former § 230, as amended by L 1936, ch 702.) Former section 399 of the General Business Law, enacted in 1953 (L 1953, ch 701), extended this restriction to leases of personal property. *(See, Peerless Towel Supply Co. v Triton Press,* 3 AD2d 249 [1st Dept 1957] [voiding renewal of a towel and soap supply contract as within this remedial provision].) The provisions of General Obligations Law § 5-903 relating to "contract[s] for service, maintenance or repair to or for any real or personal property" were first adopted in 1961 as General Business Law § 399-a. (L 1961, ch 507.) A supporting memorandum by the Attorney-General, who endorsed the bill, described the legislation as applying to " 'automatic renewal provisions contained in ser-

vice-type contracts' " and to a " 'contractor furnishing maintenance, or repair services' ". The memorandum refers to the measure as one designed to protect " 'small businessmen who unwittingly find themselves "married" to contracts for sign maintenance, laundry and linen supplies and a variety of other services.' " *(Telephone Secretarial Serv. v Sherman,* 49 Misc 2d 802, 804 [Nassau Dist Ct 1966] [quoting NY Legis Ann, at 52], *affd* 28 AD2d 1010.)

Thus, General Obligations Law § 5-903 and its predecessor General Business Law § 399-a have been held to invalidate a lease agreement for the operation of a jukebox in a restaurant *(Feder v Caliguira,* 8 NY2d 400 [1960]); the installation and servicing of coin-operated laundry machines *(Leibman v Allied Automatic Indus.,* NYLJ Sept. 29, 1976, at 16, col 5 [Civ Ct, Queens County 1976]; *Dime Laundry Serv. v 230 Apts. Corp.,* 120 Misc 2d 399 [Sup Ct, NY County 1983]); the provision of telephone answering services *(Telephone Secretarial Serv. v Sherman, supra);* installation and servicing of cigarette vending machines *(Mount Vernon Amusement Co. v Georgian Rest. Corp.,* 30 AD2d 823 [2d Dept 1968]); the provision of wire services *(Associated Press v Riddle,* 496 F Supp 119 [ED Ark 1980]; *Associated Press v Berger,* 460 F Supp 1003 [WD Tex 1978]); and the management of rental property *(Harris v Adams & Co. Real Estate,* 62 Misc 2d 749 [Civ Ct, NY County 1970]).

■ In each of these cases the agreement provided for services to or maintenance of some real or personal property. The contract herein, however, is in the nature of a personal services contract requiring that plaintiffs provide "consulting services" to the trustees and administer its plan for the benefit of 2,600 participating doctors and their dependents.

We cannot agree with the reasoning of the IAS court that because the purpose of retaining plaintiffs' services was to ensure continuation of the "fund" for the good of its beneficiaries and because the "fund" is "personal property", plaintiffs' administration of same brings the contract within General Obligations Law § 5-903.

The trustees bear primary responsibility for the plan and retained plaintiffs to render advice as an aid to them in making their decisions regarding benefits. The property, money and income which constitute the "fund" remained in the control of the trustees who retained, in addition to plaintiffs, an outside investment manager to advise them on plan

investments. The minutes of HSBP board of trustees meetings, contained in the record, reflect that plaintiff Donald Rubin, in his capacity as fund administrator, merely offered advice and recommendations to the board on such matters as budget, staffing, office space and revamping the HSBP computer system.

In *Prial v Supreme Ct. Uniformed Officers Assn.* (91 Misc 2d 115 [App Term, 1st Dept 1977]), the Appellate Term found General Obligations Law § 5-903 inapplicable to a two-year general retainer under which an attorney was to provide advice and counsel to a labor union on a variety of legal matters. The retainer was for a specified annual rate of compensation and provided that it was to be renewed for another year unless either party gave timely written notice to the other of that party's intent not to renew. The agreement herein is akin to the personal services contract in *Prial.*

We reject defendants' argument that General Obligations Law § 5-903 on its face includes "services" to any type of "personal property" and that the latter term, as defined by General Construction Law § 39, includes administrative services contracts. If this position were accepted, every employment contract containing an automatic renewal provision would fall within the ambit of General Obligations Law § 5-903, a result which does not appear to have been contemplated by the legislation. *(See, Prial v Supreme Ct. Uniformed Officers Assn.,* 89 Misc 2d 287, 289-290 [Civ Ct, NY County 1977], *affd* 91 Misc 2d 115, *supra.)* In every employment situation or professional retainer agreement the person hired is likely to come in contact with an item of personal property owned by the employer which is arguably serviced or maintained by such person.

Counsel for HSBP appears to have negotiated and prepared the subject contract and the agreement appears on HSBP letterhead. Schwartz denies that he or any of the codefendant trustees, who are elected annually, were aware of the automatic renewal clause. However, the record reflects that a copy of the contract was set forth in full in the minutes of the trustees' meeting of July 19, 1983. Thus, we are not concerned herein with a small business "unwittingly" locked into the automatic renewal of a service contract.

■ Finally, we conclude that HSBP, is a "governmental plan", exempt from the provisions of title I of ERISA. (29 USC § 1003 [b] [1]; § 1002 [32]; *Rose v Long Is. R. R. Pension Plan,*

828 F2d 910 [2d Cir 1987], *cert denied* 485 US 936 [1988]; *Feinstein v Lewis,* 477 F Supp 1256 [SD NY 1979], *affd without opn* 622 F2d 573 [2d Cir 1980].)

ERISA § 4 (b) (1) (29 USC § 1003 [b] [1]) states:

"The provisions of this title shall not apply to any employee benefit plan if—

"(1) such plan is a governmental plan (as defined in section 3 (32)".

The term "governmental plan" is defined by 29 USC § 1002 (32) as: "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing".

Thus, the HSBP plan is exempt from title I of ERISA if it was "established" or is "maintained" (1) by the government of a State, (2) by a political subdivision of a State, or (3) by an agency or instrumentality of either of the foregoing. *(Rose v Long Is. R. R. Pension Plan, supra,* 828 F2d, at 915.)

In *Rose v Long Is. R. R. Pension Plan (supra),* the Second Circuit stated that certain definitions used in regulations of the Internal Revenue Service (IRS) could be applied to ERISA. The Federal tax law (26 USC § 414 [d]) and ERISA (29 USC § 1002 [32]) similarly define the term "governmental plan". The IRS has used six factors in determining whether or not an "agency" or "instrumentality" is a subdivision of the State within the meaning of 26 USC § 414 (d). These factors, discussed by the Second Circuit in *Rose v Long Is. R. R. Pension Plan,* are equally applicable to our determination of whether HSBP is a governmental plan under ERISA. They are: (1) whether the body is used for a government purpose and performs a government function, (2) whether it performs its function on behalf of a State or political subdivision, (3) whether private interests are involved or government has the power or interests of owners, (4) whether control and supervision is vested in public authority, (5) whether statutory or other authority is necessary for the creation and/or use of the instrumentality and (6) the degree of financial autonomy. (828 F2d, *supra,* at 918.)

Applying this standard, it is clear that the New York City and County hospitals which employ physician enrollees of the HSBP plan are "agencies" or "instrumentalities" of a State or of a political subdivision of a State. Municipal hospitals are creatures of legislative or other government action, they per-

form a function on behalf of the municipality, and they are funded and regulated by government.

Similarly, we conclude that the HSBP plan was "established or maintained" by an agency or instrumentality of a State or its political subdivision for the benefit of its employees. In *Feinstein v Lewis (supra),* the District Court found that employee welfare funds established pursuant to a collective bargaining agreement between several school districts and a union were "established" by a State, political subdivision, agency or instrumentality thereof, and, thus, were "governmental plan[s]" exempt from title I of ERISA. The District Court rejected the contention that since the plans were not a creature of legislative enactment or other unilateral government action and were each administered by a board consisting of employer and union representatives, the plans were neither "established" nor "maintained" by governmental entities. The court stated: "Congress, in exempting governmental plans, was concerned more with the governmental nature of public employees and public employers than with the details of how a plan was established or maintained." (477 F Supp, *supra,* at 1262; see also, *Roy v Teachers Ins. & Annuity Assn.,* 878 F2d 47 [2d Cir 1989] [holding, New York State University Optional Retirement Program is a governmental plan "established or maintained" by the State].)

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Beatrice Shainswit, J.), entered April 19, 1989, and a judgment of said court entered thereon on May 2, 1989, dismissing the complaint should be reversed, on the law, the motion to dismiss denied, and the complaint reinstated without costs.

MILONAS, J. P., ROSENBERGER and ELLERIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on April 19, 1989, and a judgment of said court entered thereon on May 2, 1989, unanimously reversed, on the law, without costs and without disbursements, the motion to dismiss denied and the complaint reinstated.