OPINION
Appellants, Mae Ann McCray ("McCray") and Shirley A. Hatfield ("Hatfield"), appeal various decisions of the Warren County Court of Common Pleas that collectively resulted in the dismissal of their claims against their former employer, the City of Springboro, (hereafter "appellee"). Finding appellants' contentions without merit, we affirm the trial court's decisions. McCray was an employee of appellee from January 1970 until she retired on July 31, 1996. At all relevant times, McCray served as appellee's Income Tax Administrator. Hatfield was hired by appellee in 1984 as a part-time clerk, but by 1991 her position had evolved into a full-time Assistant Income Tax Administrator's position. Hatfield retired from appellee's employ on July 19, 1996.
The record reveals that in 1989 appellee passed an ordinance establishing a deferred compensation plan ("the Plan") for its employees. In the ordinance, appellee designated International City Management Association ("ICMA") Retirement Corporation the Plan administrator. ICMA is a non-profit corporation, "governed by an elected Board of Trustees for the commingled investment of retirement funds held by state and local governmental units for their employees." Appellee and ICMA entered into a contractual arrangement whereby ICMA and appellee became parties to a multiple employer Trust Agreement. ICMA assumed the responsibilities of trust maintenance, investment, and disbursement of funds under the Plan. The number of appellee's employees eligible to participate in the Plan was limited to ten, and all eligible employees were allowed to deposit up to an annual maximum of their earnings into the trust; appellee matched that amount one hundred percent.
In her deposition, McCray testified that she did not learn of appellee's Plan until 1993.[1] Upon inquiry, she was advised that the Plan was available only to department heads and supervisors. McCray requested the applicable paperwork and in March 1993, she was enrolled in the Plan. McCray repeatedly requested, by letter, that appellee make contributions to the trust on her behalf retroactive to the Plan's inception in 1989, however, appellee refused to make such contribution.
In her deposition, Hatfield testified that she too learned of appellee's Plan in 1993. Hatfield testified that she made repeated requests to be enrolled in the Plan, however the record is unclear whether Hatfield was actually eligible to participate in the Plan. For whatever reason, Hatfield was repeatedly denied enrollment despite her requests to enroll in the Plan.
Appellants, believing they were victims of discrimination,[2]
filed a civil action against appellee in the Warren County Court of Common Pleas on December 19, 1996. Appellants' complaint alleged two violations (First and Second claims) of the Employee Retirement Income Security Act ("ERISA") and a single violation of R.C. 4112.02 (Third claim). Appellants also sought a class action determination (Fourth claim) with respect to the aforementioned claims.
In April 1997, pursuant to Civ.R. 12(B)(6), appellee filed a Motion to Dismiss for Failure to State a Claim. In its motion, appellee contended the Plan was a "governmental plan," as that term is defined under Title I of ERISA, and therefore exempt from the requirements of ERISA. The trial court by entry dated July 3, 1997 agreed with appellee and dismissed appellants' First and Second claims.
In July 1997, pursuant to Civ.R. 56, appellee filed a Motion for Summary Judgment with respect to appellants' R.C. Chapter 4112 claim. Appellee contended that the applicable statute of limitations had tolled on the claim. While this motion was pending, in August 1997, appellants filed a Motion to Amend Complaint pursuant to Civ.R. 15(A) alleging that they had a "contractual relationship" that appellee had breached (Fifth claim). By decision dated November 13, 1997, the trial court held that the applicable statute of limitations was one hundred eighty days and appellants' Third claim was time barred.
As a direct result of its prior rulings, the trial court determined that appellants' motion for class action certification was moot and dismissed appellants' Fourth claim. Then, by entry dated November 21, 1997, the trial court denied appellants' Motion to Amend Complaint stating, "no explanation as to why this claim could not have been filed originally, such as newly discovered evidence, etc.," had been given. It is from these three decisions that appellants appeal.
In their first assignment of error, appellants contend:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANTS IN THE COURT'S JUDGMENT OF JULY 3, 1997, DISMISSING PLAINTIFFS-APPELLANTS' FIRST AND SECOND CLAIMS FOR RELIEF ON THE GROUNDS THAT THE DEFERRED COMPENSATION PLAN AT ISSUE WAS A "GOVERNMENTAL PLAN" AS DEFINED BY THE EMPLOYMENT RETIREMENT INCOME SECURITY ACT (ERISA) AND THAT THE REQUIREMENTS TO BE MET UNDER ERISA AS SET FORTH IN PLAINTIFFS-APPELLANTS FIRST AND SECOND CLAIMS FOR RELIEF DID NOT APPLY.
The Employment Retirement Income Security Act of 1974, or ERISA, (Section 1001 et seq., Title 29, U.S. Code) was enacted by Congress to protect the interests of employees and their beneficiaries from abuses in the private administration and investment of employee retirement and benefit plans. Broadly stated, ERISA sets forth minimum standards and requirements for private employers related to these plans and provides administrative remedies, sanctions, and recourse in the courts. Although applying ERISA to public retirement and benefit plans was considered, Congress was reluctant to interfere with the administration of public retirement and benefit plans due to the resulting federalism implications. See H.R. Rep. No. 533, 1974 U.S. Code Cong. Ad. News at 4647. Consequently, Section 1003(b)(1) was drafted to exempt "a governmental plan (as defined in section * * * 29 USCS Section 1002[32])" from ERISA's requirements.
Section 1002(32) of ERISA defines a "governmental plan" as:
 a plan established or maintained for its employees by the Government of the United States, by the government of any State or any political subdivision thereof, or by any agency or instrumentality of the foregoing.
It is axiomatic that appellee is a political subdivision of the State of Ohio. However, appellants contend that the Plan is not a "governmental plan" entitled to exemption status under Title I of ERISA because it "is established by the non-governmental International City Manager's Association (ICMA)." Appellants cite In re: Handshaw (M.D.Fla. 1996),198 B.R. 633, to support their contention.
In Handshaw, Collier County, Florida adopted (by ordinance) a deferred compensation plan through its affiliation with the National Association of Counties Deferred Compensation Program (hereafter the "NaCo Plan"). The NaCo Plan in turn utilized ICMA Retirement Corporation for its deferred compensation program. The NaCo plan was not financed by contributions made by Collier County on behalf of its employees, but rather only from voluntary payroll deductions. Handshaw contended that his interest in the NaCo plan, pursuant to ERISA requirements, was exempt from his pending bankruptcy proceedings. In analyzing Handshaw's contention, the United States Bankruptcy Court noted that there were actually two plans to consider: (1) Collier County's deferred compensation plan, and (2) NaCo's Plan. The Bankruptcy Court unequivocally stated that Collier County's plan was a "governmental plan" under ERISA and therefore, exempt from ERISA requirements. However, in determining that the NaCo plan itself was not a "governmental plan" and subsequently subject to ERISA requirements, the Court relied on the fact that (1) the NaCo plan was not financed by Collier County, and (2) the "National Association of Counties is itself not a governmental entity of the United States or a political subdivision thereof." Appellants urge this court to find that the circumstances of Handshaw are analogous to the circumstances of the case sub judice. We decline to so find.
In determining whether a particular plan is a "government plan" as that term is defined under Title I of ERISA, a number of factors may be considered. The Department of Labor[3] ("the DOL") has issued various advisory Opinion Letters to aid in determining whether a plan is a "governmental plan" under ERISA. Specifically, the DOL has interpreted the term "governmental plan" to include: (1) plans established or maintained by a governmental entity; (2) plans funded by a governmental entity; (3) plans established for the benefit of governmental employees; and (4) plans in which a governmental entity is involved in the management or control of the program. See ERISA Op. Letter No. 79-56, and ERISA Op. Letter No. 89-19.
We note at the outset that, unlike Collier County, Florida, appellee in the case sub judice contracted directly with ICMA, thereby establishing a single plan as opposed to the two created in Handshaw. Such action effectively distinguishes the plan in the instant case from the plans in Handshaw. Furthermore, there is no question that the Plan at issue was established by the express unilateral legislative action of a governmental entity: namely a city ordinance passed by the City Council of Springboro, Ohio. Appellants appear to be arguing that because the Plan is not maintained by appellee, but instead maintained by ICMA — a "non-governmental" association, it is not entitled to be exempt from ERISA requirements. However, the contractual agreement between appellee and ICMA states that ICMA manages "the commingled investment of retirement funds held by state and local governmental units for their employees" (emphasis added). This court believes that a commingling of such assets would be entitled to claim the "governmental plan" exemption status. Even if this commingling were not entitled to such exemption status, it is enough that the Plan in this case was established by a governmental entity even if it is not maintained by a governmental entity.
The language of Section 1003(32), Title 29, U.S. Code provides that a "governmental plan" is one that is "established or maintained" by a governmental entity (emphasis added). We read the "or" in this definition as disjunctive. That is, either (1) a plan established by a governmental entity, or (2) a plan maintained by a governmental entity, is entitled to the "governmental plan" exemption status under ERISA.[4] See Feinstein v. Lewis (S.D.N.Y. 1979), 477 F. Supp. 1256, 1260, and Hightower v. Texas Hosp. Ass'n (C.A. 5 1995), 65 F.3d 443, 450.
Considering other factors enumerated by the DOL, we note that appellee's Plan is financed, in part, directly from funds provided by a governmental entity. Unlike the NaCo plan in Handshaw, appellee's Plan is designed so that appellee matched one hundred percent of all funds placed into the Plan by employees. Additionally, appellee's Plan was established for the benefit of governmental employees. Specifically, the ordinance provides, "the establishment of a deferred compensation plan for such employees serves the interest of the City by enabling it to provide reasonable retirement security for its employees" (emphasis added). Finally, under the language of the ordinance, appellee is involved in the management and control of the Plan, albeit minimally, in that the ordinance provides, "[t]hat the Finance Director of the City of Springboro shall * * * cast on behalf of the City, any required votes under the Program."
Upon consideration of these factors, we conclude that appellee's Plan is indeed a "governmental plan" as that term is defined under Title I of ERISA. Accordingly, the trial court did not err when it dismissed appellants' First and Second claims on grounds that appellee's Plan was exempt from ERISA's requirements. Appellants' first assignment of error is hereby overruled.
In their second assignment of error, appellants contend:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN ITS JUDGMENT OF DECEMBER 19, 1997 SUSTAINING DEFENDANTAPPELLEE'S CITY OF SPRINGBORO'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS'-APPELLANTS' THIRD AND FOURTH CLAIMS FOR RELIEF ON THE BASIS THAT THEY WERE TIME BARRED BY THE 180 DAY PROVISION OF SECTION 4112.02 OHIO REVISED CODE.
Appellants' argument with respect to this assignment of error is two pronged. Initially, appellants contend that a private civil claim brought by an employee against an employer for unlawful discrimination is controlled by a six-year statute of limitations. In the alternative, appellants argue that if the applicable statute of limitations is one hundred eighty days, then their claims are "continuing violations" that were filed within the one hundred eighty day statute of limitations defined in R.C. 4112.02(N).
We begin with appellants' contention that the statute of limitations applicable to their R.C. Chapter 4112 claim is six years. In Elek v. Huntington Natl. Bank (1991), 60 Ohio St.3d 135, 136, the Ohio Supreme Court stated that R.C. 4112.99 created an independent civil action to remedy any form of discrimination identified in R.C. Chapter 4112. R.C. 4112.99 provides that "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or other appropriate relief. R.C.4112.99, however, does not contain a specific statute of limitations. Thus, in interpreting R.C. 4112.99, the Supreme Court has held that because it is a remedial statute, claims brought pursuant to R.C. 4112.99 are subject to R.C. 2305.07's general six-year statute of limitations. Cosgrove v. Williamsburg (1994), 70 Ohio St.3d 281, at syllabus. However, the Supreme Court has also recognized that "there may be instances where R.C. 4112.99 would conflict with other more specific provisions of R.C. Chapter 4112." Bellian v. Bicron Corp. (1994), 69 Ohio St.3d 517, 519. Justice Resnick squarely addressed this situation in Cosgrove:
 To the extent that other specific provisions set forth a statute of limitations, a conflict would exist between such specific provision and R.C. 4112.99, relative to the applicability of the statute of limitations. In such an event, pursuant to R.C. 1.51, the specific statute of limitations must prevail.
Cosgrove at 290-291, (Resnick, J., concurring).
Within R.C. Chapter 4112, there exists a "specific provision" addressing claims of age discrimination. Former R.C. 4112.02(N) provided:[5]
 An aggrieved individual may enforce his rights relative to discrimination on the basis of age as provided in this section by instituting a civil action, within one hundred and eighty days after the alleged unlawful discriminatory practice occurred * * *. (Emphasis added.)
We find that the crucial distinction to be made in this case is that appellants instituted their R.C. 4112.02 claims on the basis of age. Thus, R.C. 4112.02(N) "makes it clear that any age-based employment discrimination claim, premised on a violation described in R.C. Chapter 4112, must comply with the one-hundred-eighty day statute of limitations set forth in R.C.4112.02(N)." Bellian at 520. We therefore reject appellants' contention that the statute of limitations applicable to their R.C. Chapter 4112 claim is six years. Any age claim filed by appellants under R.C. Chapter 4112 is subject to the "specific provision" of former R.C. 4112.02(N), and must have been instituted within one hundred eighty days of the unlawful discriminatory practice.
Turning to appellants' alternative contention, appellants argue that appellee's refusal to make retroactive contributions to the Plan on behalf of McCray, and appellee's refusal to allow Hatfield to participate in the Plan were continuing discriminatory practices that extended up to and included their respective dates of retirement. Essentially, appellants urge this court to find that an unlawful discriminatory act occurred on their last day of employment with appellee. Assuming such a discriminatory act actually occurred on their last day of employment, appellants' claims would have been properly filed within the proscribed one hundred eighty-day statute of limitations. Appellee contends, however, that because McCray and Hatfield were aware of appellee's alleged discriminatory acts in 1993, the statute of limitations accrued in 1993, and their claims are now time-barred. We find appellee's argument persuasive.
"In construing Ohio's employment discrimination statutes, and in particular, the accrual of discrimination claims under R.C.4112.02(N), Ohio courts may look to federal case law as persuasive authority." Beraducci v. Oscar Mayer Foods Corp. (Aug. 17, 1984), Erie App. No. E-84-2, unreported, at 6. Specifically, the federal courts have held that "[r]epeated requests for * * * relief from a prior act of discrimination will not set the statute of limitations running anew." Janikowski v. Bendix Corp. (C.A. 6, 1987), 823 F.2d 945, 948, (citations omitted). An exception to this rule exists when a plaintiff can establish an "over-arching policy of discrimination." Id. However, "[i]n the absence of such a policy," federal courts have found "there is no continuing violation." Id.
Ohio state courts have further held that in order to determine whether a charge is timely filed, the focus should be on the time that the discriminatory act actually occurs. Specifically, "an age discrimination claim, pursuant to R.C. 4112.02(A), accrues, and the 180-day limitation period under R.C. 4112.02(N) commences, when the discriminatory act or practice occurs, not when adverse consequences or other facts resulting therefrom manifest themselves." Beraducci at 9.
In the case sub judice, we find that McCray's requests that appellee make a retroactive contribution to the Plan on her behalf, and Hatfield's requests to be allowed to participate in the Plan, are nothing more than "[r]epeated requests for * * * relief from a prior act of discrimination." Janikowski at 948. Consequently, the statute of limitations did not continually run anew each and every day. Furthermore, appellants have put forth no evidence indicating an "over-arching policy of discrimination" engaged in by the appellee. Id. There is no evidence that all employees over a particular age were systematically denied access to information about the Plan, routinely denied participation in the Plan, or even that appellee uniformly refused to place funds in the plan on behalf of its employees over a particular age. In fact, there is evidence quite the contrary as appellee allowed McCray to enroll in the Plan upon her request in 1993 and thereafter matched the funds she placed in the trust one hundred percent. Because appellants have put forth no evidence of "an over-arching policy of discrimination," we find any alleged discriminatory acts were not continuing. Id. Consequently, appellants' respective causes of action accrued on the actual dates the allegedly discriminatory acts took place. Beraducci at 9.
Unfortunately, the record before us does not contain the precise dates upon which appellee denied McCray's request that it retroactively contribute to the Plan on her behalf, or the precise dates upon which appellee denied Hatfield participation in the Plan. Thus, we cannot conclusively determine the precise dates upon which appellants actually suffered injury and their statute of limitations commenced. Based upon appellants' deposition testimony, however, we can safely determine that appellants were fully cognizant of appellee's alleged discriminatory acts sometime during 1993. Therefore, the alleged discriminatory or injurious acts must have occurred sometime during, or prior to, 1993. It follows then that the statute of limitations commenced sometime during, or prior to, 1993. Id. Accordingly, we find the trial court did not err when it concluded appellants' claims were time-barred pursuant to R.C.4112.02(N), and we overrule appellants' second assignment of error.
In their third assignment of error, appellants contend:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS-APPELLANTS IN ITS JUDGMENT OF DECEMBER 19, 1997, OVERRULING PLAINTIFFSAPPELLANTS [sic] RULE 15(A) MOTION TO AMEND THE COMPLAINT.
As has been stated, appellants sought to amend their complaint to include a claim that appellee had breached a "contractual relationship" it had with appellants. Appellants contend that where a motion to amend is timely filed in a matter not yet set for trial, and where the defendant-appellee has not put on evidence to oppose the motion, a trial court commits error by not allowing appellants to amend their complaint.
Civ.R. 15(A) provides:
 a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires.
The Ohio Supreme Court has held that the Civil Rules are to be liberally construed so that cases are resolved upon their merits, not upon pleading deficiencies. See Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 175. However, Ohio courts have also held that "[a]mendment of pleadings by leave of court, Civ.R. 15(A), is a matter of judicial discretion." State ex rel. Wargo v. Price (1978), 56 Ohio St.2d 65, 66. A denial to amend a complaint will not be disturbed on appeal without a showing of an abuse of discretion and we note that "[t]he term abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, (citations omitted).
Because the rule states that leave to amend a complaint "shall be freely given when justice so requires," we find a grant of leave to amend should not be withheld without good reason. Solowitch v. Bennett (1982), 8 Ohio App.3d 115, 116. In Peterson, the Ohio Supreme court stated:
 [w]here it is possible that the plaintiff, by amended complaint, may set forth a claim upon which relief may be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of such leave is an abuse of discretion.
Id. at 175, (emphasis added).
In the instant case, the trial court specifically disclosed its reasons for denying appellants leave to amend, by stating:
 [t]he motion to amend was filed some seven and one-half months after the Complaint. We have been provided no explanation as to why this claim could not have been filed originally, such as newly discovered evidence, etc. We also note that the instant motion was filed three weeks after the Court dismissed the First and Second Claims of the original Complaint. The proposed new claim appears to be essentially a restatment [sic] of the underlying fundament for the First Claim. For these reasons, the motion to amend is hereby denied.
Given that the trial court was vested with wide discretion in granting or denying leave to amend, and it clearly disclosed its reasons for denying appellants leave to amend, we find no abuse of discretion. From the language employed in the entry, it appears that trial court doubted that appellants had actually pleaded a new claim upon which relief could be granted, and based upon the timing of this new claim, suspected that it was not brought in good faith. Because we find the trial court did not abuse its discretion, appellants' third assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] The original complaint filed with the trial court avers that appellants learned of the existence of the plan in 1992, however, both appellants admit during testimony that they learned of the plan's existence in 1993.
[2] The complaint filed in the case sub judice fails to indicate upon what basis appellants allegedly suffered discrimination. However appellants' deposition testimony indicated that both women believed they were the victims of unlawful age discrimination.
[3] The Department of Labor is the primary governmental agency charged with administering and enforcing ERISA.
[4] It should be noted that the definition of a "governmental plan" is inconsistently defined throughout ERISA. Compare ERISA's Section 1003(32), Title 29, U.S. Code ("established or maintained"), with IRC's Section 414(d), Title 26, U.S. Code ("established and maintained"), and ERISA's Section 1321(b)(2), Title 29, U.S. Code ("established and maintained").
[5] In an apparent effort to eliminate some of this confusion and as a result of Ohio Tort Reform, effective January 27, 1997, all actions brought pursuant to R.C. Chapter 4112 are now subject to a uniform statute of limitations of two (2) years. See H.B. 350.