[967 NE2d 1170, 944 NYS2d 725]

BRUCE OVITZ, on Behalf of Himself and All Others Similarly Situated, Appellant, v BLOOMBERG L.P. et al., Respondents.

Argued February 8, 2012; decided March 27, 2012

**POINTS OF COUNSEL**

*Tannenbaum Helpern Syracuse & Hirschtritt LLP*, New York City (*Vincent J. Syracuse* and *Matthew J. Sinkman* of counsel), and *Sperling & Slater, P.C.*, Chicago Illinois (*Bruce S. Sperling, Mitchell H. Macknin* and *Greg Shinall* of counsel), for appellant. I. The applicable standard of review is de novo. (*Leon v Martinez*, 84 NY2d 83.) II. A private right of action is implied under the automatic renewal statutes. (*Sheehy v Big Flats Community Day*, 73 NY2d 629; *Telephone Secretarial Serv. v Sherman*, 28 AD2d 1010; *Chotapeg, Inc. v Bullowa*, 291 NY 70; *Negrin v Norwest Mtge.*, 263 AD2d 39.) III. The Deceptive Practices Act applies to appellant's claims because Bloomberg L.P.'s and Bloomberg Finance L.P.'s deceptive conduct occurred in New York. (*Karlin v IVF Am.*, 93 NY2d 282; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20; *Matter of People v Telehublink Corp.*, 301 AD2d 1006; *People v H&R Block, Inc.*, 16 Misc 3d 1124[A], 2007 NY Slip Op 51562[U]; *People v Lipsitz*, 174 Misc 2d 571.) IV. Bloomberg L.P. and Bloomberg Finance L.P. cannot avoid declaratory and injunctive relief or frustrate a class action by unilaterally attempting to

moot the claims of a named plaintiff. (*James v Alderton Dock Yards*, 256 NY 298; *Deposit Guaranty Nat. Bank v Roper*, 445 US 326; *New York Foreign Trade Zone Operators, Inc. v State Liq. Auth.*, 285 NY 272; *Klostermann v Cuomo*, 61 NY2d 525; *Andin Intl. v Matrix Funding Corp.*, 194 Misc 2d 719; *Dime Laundry Serv. v 230 Apts. Corp.*, 120 Misc 2d 399; *Kalisch-Jarcho, Inc. v City of New York*, 72 NY2d 727; *Four Times Sq. Assoc. v Cigna Invs.*, 306 AD2d 4; *Board of Higher Educ. of City of N.Y. v Marcus*, 63 Misc 2d 268.)

*Willkie Farr & Gallagher LLP*, New York City (*Thomas H. Golden* and *Sameer Advani* of counsel), for respondents. I. No implied private right of action exists under General Obligations Law §§ 5-901 and 5-903. (*Sheehy v Big Flats Community Day*, 73 NY2d 629; *Kaminsky v Abrams*, 51 Misc 2d 5; *Super Glue Corp. v Avis Rent A Car Sys.*, 132 AD2d 604; *Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207; *Concourse Nursing Home v Axiom Funding Group*, 279 AD2d 271; *Ludl Elecs. Prods. v Wells Fargo Fin. Leasing*, 6 AD3d 397; *Telephone Secretarial Serv. v Sherman*, 28 AD2d 1010; *Negrin v Norwest Mtge.*, 263 AD2d 39; *Andin Intl. v Matrix Funding Corp.*, 194 Misc 2d 719; *Chotapeg, Inc. v Bullowa*, 291 NY 70.) II. Bruce Ovitz fails to state a cause of action for violation of General Business Law § 349. (*Scott v Bell Atl. Corp.*, 282 AD2d 180; *Goshen v Mutual Life Ins. Co. of N.Y.*, 286 AD2d 229, 98 NY2d 314; *People v Lipsitz*, 174 Misc 2d 571; *Morrissey v Nextel Partners, Inc.*, 72 AD3d 209; *Drizin v Sprint Corp.*, 12 AD3d 245; *Gavin v AT&T Corp.*, 543 F Supp 2d 885; *Chiste v Hotels.com L.P.*, 756 F Supp 2d 382; *SimplexGrinnell LP v Integrated Sys. & Power, Inc.*, 642 F Supp 2d 167; *Kaufman v Sirius XM Radio, Inc.*, 751 F Supp 2d 681; *Sheth v New York Life Ins. Co.*, 273 AD2d 72.) III. Bruce Ovitz has not alleged any injury resulting from Bloomberg L.P.'s and Bloomberg Finance L.P.'s alleged conduct. (*Di Mascio v General Elec. Co.*, 27 AD3d 854; *Concourse Nursing Home v Axiom Funding Group*, 279 AD2d 271; *Ludl Elecs. Prods. v Wells Fargo Fin. Leasing*, 6 AD3d 397; *Matter of Acme Bus Corp. v Board of Educ. of Roosevelt Union Free School Dist.*, 91 NY2d 51; *Walker v City of New York*, 46 AD3d 278; *City of New York v Smokes-Spirits.Com, Inc.*, 12 NY3d 616; *Medical Socy. of State of N.Y. v Oxford Health Plans, Inc.*, 15 AD3d 206; *Cherny v Emigrant Bank*, 604 F Supp 2d 605; *Lincoln First Bank of Rochester v Barstro & Assoc. Contr.*, 49 AD2d 1025.) IV. Declaratory and injunctive relief are not warranted in this case. (*Rapp v Dime Sav. Bank of N.Y.*, 64 AD2d 964; *Lewis v Hertz Corp.*, 212 AD2d 476; *Deposit Guaranty*

*Nat. Bank v Roper*, 445 US 326; *Murray v Empire Ins. Co.*, 175 AD2d 693; *Lusardi v Xerox Corp.*, 975 F2d 964; *Greif v Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, 258 F Supp 2d 157; *James v Alderton Dock Yards*, 256 NY 298; *Spitzer v Schussel*, 48 AD3d 233; *Klostermann v Cuomo*, 61 NY2d 525; *Andin Intl. v Matrix Funding Corp.*, 194 Misc 2d 719.)

*Skadden, Arps, Slate, Meagher & Flom LLP*, New York City (*Jeffrey A. Mishkin, Anthony J. Dreyer* and *Jamie Stockton* of counsel), for Sirius XM Radio Inc., amicus curiae. I. Automatic renewal of subscriptions or service contracts is beneficial to consumers. II. General Obligations Law § 5-903 is merely a defense to continued enforcement of a contract, and does not support a claim for damages or an injunction. (*Johnson v Uni-First Corp.*, 67 AD3d 1442; *Ludl Elecs. Prods. v Wells Fargo Fin. Leasing*, 6 AD3d 397; *Concourse Nursing Home v Axiom Funding Group*, 279 AD2d 271; *Eurofactors Intl., Inc. v Jacobowitz*, 21 AD3d 443; *Holender v Cammann Prods.*, 78 AD2d 233; *Kaminsky v Abrams*, 51 Misc 2d 5; *Hawa Const., LLC v Pollock*, 674 F Supp 2d 256; *Fortune Limousine Serv., Inc. v Nextel Communications*, 35 AD3d 350; *Enrico & Sons Contr. v Bridgemarket Assoc.*, 252 AD2d 429.)

**OPINION OF THE COURT**

JONES, J.

In June 2000, plaintiff Bruce Ovitz, an Illinois resident, entered into a two-year subscription agreement with defendant Bloomberg L.P. (Bloomberg) to lease a desktop terminal, software and other equipment to access real-time financial information services offered by the company. The contract provided that it "shall be automatically renewed for successive two-year periods" unless either the lessee (plaintiff) or lessor (Bloomberg) decided to terminate prior to renewal "by giving not less than 60 days' prior written notice to the other."

After the term of the original agreement expired in June 2002, plaintiff continued to use the equipment and financial services, without complaint, until September 15, 2008 when he contacted a Bloomberg sales representative to apprise the company that he "no longer wished to subscribe to [Bloomberg's] services, and wanted to terminate as of the end of the month." According to plaintiff's complaint, he was informed by the Bloomberg representative that the agreement had automatically renewed until June 15, 2010 and plaintiff would be obligated to remit periodic payments through the termination date, or pay an early

termination fee equivalent to a year's worth of service ($18,720). Plaintiff also alleges that Bloomberg declared that it was their "standard policy not to give its subscribers any advance notice of the automatic renewal provision or deadline."

Plaintiff sent written notice to Bloomberg on October 7, 2008, reiterating his desire to terminate the agreement. Bloomberg, in turn, did not terminate the subscription service or remove the equipment, but instead, reaffirmed its view that the agreement had automatically renewed and sent an invoice on October 23, 2008 requesting payment for the next three months of service.

In an ensuing exchange of e-mails, Bloomberg sent plaintiff an invoice for past due payments in the sum of $5,699.70. Plaintiff replied "as [I] have said repeatedly since [S]ept 08,[ I] no longer want to subscribe[ ] please disconnect my software and pick up your keyboard." Bloomberg transmitted a subsequent e-mail demanding immediate payment for past due amounts, including an additional $16,470 charge for termination of the contract. Due to plaintiff's nonpayment, Bloomberg claimed that he had breached the terms of the contract and sent a notice of termination, advising that the nonpayment violated paragraph 3 (a) of the agreement and as such, "unless Bloomberg L.P. Accounting receives payment in full of all past due invoices by no later than 5:00 PM on 12/15/2008 the Agreement will be terminated and your Bloomberg equipment will be removed and returned."

On December 16, 2008, plaintiff commenced the instant putative class action, alleging a violation of General Obligations Law §§ 5-901 and 5-903; breach of contract; unjust enrichment; negligent misrepresentation; violation of General Business Law § 349; and seeking declaratory and injunctive relief. Two weeks after plaintiff filed suit, Bloomberg "as an accommodation[,] . . . waive[d] the early termination buy-out" and "waiv[ed] collection of fees."

Supreme Court granted, in part, Bloomberg's pre-answer motion to dismiss pursuant to CPLR 3211 (a) (7), dismissing plaintiff's breach of contract, unjust enrichment and negligent misrepresentation claims (2009 NY Slip Op 32397[U] [2009]). The court, however, found an implied private right of action under General Obligations Law §§ 5-901 and 5-903 that "support[ed] a claim that the agreement was not properly renewed beyond the expiration date of the initial term, even if plaintiff

accepted Bloomberg services" (*id.* at *11). Moreover, although acknowledging plaintiff's out-of-state residence, the court permitted his General Business Law § 349 cause of action to survive on the ground that the complaint contained sufficient factual allegations to support a claim of deceptive business acts by Bloomberg within the State of New York. Finally, the court concluded that plaintiff's claims for declaratory judgment and a permanent injunction, enjoining Bloomberg from engaging in the alleged conduct, were supported by the existence of a justiciable controversy and irreparable harm, respectively.

The Appellate Division unanimously reversed, granting Bloomberg's motion in its entirety and dismissing plaintiff's complaint (77 AD3d 515 [1st Dept 2010]). The court remarked that Bloomberg's failure to comply with the mandates of sections 5-901 and 5-903 rendered its automatic renewal provision inoperative and unenforceable, but observed that this alone did not warrant the maintenance of plaintiff's complaint as he failed to allege "that he paid for services he did not receive" (*id.* at 516). Plaintiff's General Business Law § 349 claim was deemed meritless because he was not deceived in New York State and failed to plead actual injury suffered as a result of the alleged deceptive practices. Finally, as Bloomberg did not commence enforcement proceedings against plaintiff and waived its collection of payments and fees, there was no justiciable controversy or irreparable harm supporting equitable relief.

This Court granted plaintiff leave to appeal (16 NY3d 705 [2011]), and we now affirm.

■ In the context of a CPLR 3211 motion to dismiss, even affording plaintiff every favorable inference, as we must, when reviewing the pleadings and factual allegations of his complaint (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 178 [2011]; *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *Morone v Morone*, 50 NY2d 481, 484 [1980]), plaintiff's failure to identify a cognizable injury proves fatal to his action against Bloomberg.

Assuming, without deciding, that an implied private right of action lies pursuant to General Obligations Law §§ 5-901 and 5-903,[1] plaintiff's claim was rightly dismissed because he has not suffered any harm as a result of Bloomberg's alleged practices. Plaintiff did not pay any service termination fees and, as

---

1. General Obligations Law § 5-901 provides, in relevant part:
   "No provision of a lease of any personal property which states that the term thereof shall be deemed renewed for a specified ad-

the Appellate Division noted, he did not pay for services he did not receive; thus, no monetary damages were incurred (*see Ludl Elecs. Prods. v Wells Fargo Fin. Leasing*, 6 AD3d 397 [2d Dept 2004]; *Concourse Nursing Home v Axiom Funding Group*, 279 AD2d 271 [1st Dept 2001]). Plaintiff contends that he suffered damages because he sought to cancel his agreement as of September 15, 2008, but had prepaid for services through September 30, 2008. However, his complaint belies this argument as it pleads that plaintiff had notified Bloomberg that he "wanted to terminate [services] as of the end of the month." Further, despite the complaint's allegation that plaintiff's credit rating was impaired, Bloomberg's concession that the automatic renewal provision clause was rendered unenforceable and waiver of its claims to termination fees ceased any threat of injury.

Plaintiff's General Business Law § 349[2] claim must be similarly dismissed for lack of injury. It is well settled that a prima facie showing requires allegations that a "defendant is engaging in an act or practice that is deceptive or misleading in a material way and that *plaintiff has been injured by reason thereof*" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25 [1995] [emphasis added]; *see also City of New York v Smokes-Spirits.Com, Inc.*, 12 NY3d 616,

---

ditional period unless the lessee gives notice to the lessor of his intention to release the property at the expiration of such term, shall be operative unless the lessor, at least fifteen days and not more than thirty days previous to the time specified for the furnishing of such notice to him, shall give to the lessee written notice, served personally or by mail, calling the attention of the lessee to the existence of such provision in the lease."

General Obligations Law § 5-903 (2) similarly provides:

"No provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract service, maintenance or repair of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service, maintenance or repair, unless the person furnishing the service, maintenance or repair, at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract."

2. General Business Law § 349 (a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

623 [2009]; *Varela v Investors Ins. Holding Corp.*, 81 NY2d 958, 961 [1993]).

█ Finally, the Appellate Division properly dismissed plaintiff's claims for equitable relief. In light of the absence of actual injury and Bloomberg's waiver of its claims, there is neither a justiciable controversy upon which a declaratory judgment can be rendered, nor the irreparable harm necessary for injunctive relief (*see American Ins. Assn. v Chu*, 64 NY2d 379, 383 [1985]; *Cuomo v Long Is. Light. Co.*, 71 NY2d 349, 354 [1988]; CPLR 6301; *Kane v Walsh*, 295 NY 198, 205-206 [1946]; *Parry v Murphy*, 79 AD3d 713, 715-716 [2d Dept 2010]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (dissenting in part). Because, in my view, plaintiff has alleged sufficient facts to sustain his declaratory judgment action, I dissent from that part of the majority opinion affirming the Appellate Division's dismissal of that cause of action. Since this case is before us on a motion to dismiss, the facts are drawn without contradiction from plaintiff's complaint.

On June 15, 2000, plaintiff entered into an agreement with Bloomberg L.P. and Bloomberg Finance L.P. (collectively, Bloomberg) to (1) lease certain equipment (a Bloomberg terminal) and services; and (2) subscribe to additional services (news and financial information). Paragraph 2 (b) of the Agreement contains an "automatic renewal provision" that states that said Agreement will be automatically renewed for successive two-year periods unless Bloomberg or plaintiff elected not to renew by giving not less than 60 days notice to the other. The provision states as follows:

"2. Term.

"(a) This agreement shall be effective from the date it is accepted by Lessor [Bloomberg] and shall remain in full force and effect thereafter until the date that is two years after the date that the Services are first provided (the 'Term'), unless earlier terminated during the Term or any renewal thereof, as follows: (i) Lessee [Plaintiff] shall have the right to terminate this Agreement at any time upon not less than 60 days' prior written notice to Lessor and

upon payment of the charges set forth in paragraph 3 of this Agreement; and (ii) Lessor shall [*sic*] the right to terminate this Agreement at any time immediately upon written notice to Lessee in the event of a breach by Lessee of any of the provisions of this Agreement.

"(b) The Term shall be automatically renewed for successive two-year periods unless Lessee or Lessor elects not to renew by giving not less than 60 days' prior written notice to the other. If this Agreement is so renewed for any additional period beyond the initial Term, the charges payable pursuant to paragraph 3(a) hereof for such renewal period shall be calculated at the prevailing rates then offered by Lessor, and the Schedule shall be considered to be amended accordingly."

Although the Agreement expired on June 15, 2002, Bloomberg never sent a notice to plaintiff giving him advance notice of the automatic renewal as required by statute (*see* General Obligations Law §§ 5-901, 5-903), nor did plaintiff expressly renew the Agreement. Plaintiff thereafter continued making payments, and Bloomberg continued providing the equipment and services.

In September 2008, plaintiff contacted a Bloomberg representative and advised him that he no longer wished to subscribe to Bloomberg's services, and that he wished to terminate the Agreement as of the end of September 2008. The representative directed plaintiff to the automatic renewal provision and told him that the Agreement was "operative and enforceable" and that he was obligated to fulfill its terms until June 15, 2010, admitting that it was Bloomberg's "standard policy" *not* to give advance notice of the automatic renewal deadline, a policy having been in effect for the previous $10^{1}/_{2}$ years. The representative also stated that Bloomberg would terminate the Agreement in exchange for nearly $20,000, approximately one year's worth of payments under the Agreement.

In October 2008, plaintiff sent Bloomberg written notice stating that he wanted his subscription cancelled as of October 1, 2008. Notwithstanding this, on October 23, Bloomberg sent plaintiff a notice stating that his payment for the last quarter of 2008 was due, prompting plaintiff to e-mail Bloomberg that he had cancelled his subscription. Upon receiving a similar notice in November 2008, plaintiff demanded in writing that Bloomberg retrieve its equipment.

On December 9, 2008, Bloomberg sent plaintiff a letter that included all outstanding invoices on plaintiff's account, including $5,400 on an outstanding invoice for charges subsequent to plaintiff's termination of the Agreement. The letter stated that plaintiff was in breach of the Agreement and that, per the Agreement, Bloomberg would repossess the Bloomberg equipment and that plaintiff would be liable for a 50% termination charge covering the balance of the Agreement.

Plaintiff commenced this action seeking declaratory and injunctive relief on the ground that the Agreement is unenforceable. The action also alleged an as-of-yet uncertified "class action" against Bloomberg asserting, as relevant here, causes of action premised on alleged violations of General Obligations Law §§ 5-901 and 5-903 (the "automatic renewal" statutes) and General Business Law § 349 ("unfair and deceptive acts and practices" statute). Bloomberg moved to dismiss the complaint for failure to state a cause of action.

Supreme Court denied Bloomberg's motion to dismiss the General Obligations Law §§ 5-901 and 5-903 and General Business Law § 349 causes of action, concluding that, as to the claim for a permanent injunction, the threat to plaintiff's creditworthiness was sufficient to establish irreparable injury, and that as to the declaratory judgment claim, there was a "justiciable controversy" (2009 NY Slip Op 32397[U], *13 [2009]).

The Appellate Division, in dismissing the complaint, concluded that the automatic renewal provision in the Agreement was "inoperative" and "unenforceable" because Bloomberg failed to give the requisite notice, but nevertheless found that dismissal was warranted because plaintiff failed to allege that he paid for services that he did not receive and, to the extent that plaintiff sought damages for the alleged breach of the "automatic renewal" statutes, a private right of action was not expressly created by their language, nor could it be fairly implied (77 AD3d 515, 515 [2010]).

In my view, the Appellate Division's dismissal went well beyond its function at this stage of the proceeding. This is a declaratory judgment action and, as such, the court's duty was to determine, upon an assumption that the allegations were true, whether Bloomberg violated the automatic renewal statutes—and it is clear that it did. The court's further finding—that there is no private right of action for the violation of

such statutes—goes beyond the purpose of a declaratory judgment action. Instead, it concluded that "declaratory and injunctive relief is unwarranted . . . since no justiciable controversy remains to support the claim for declaratory relief" (*id.* at 516).

Plaintiff's cause of action for declaratory and injunctive relief states that there is an "actual and justiciable controversy" between plaintiff and Bloomberg relative to their rights and obligations under the Agreement, and that Bloomberg has "engaged in and continue[s] to engage in conduct that has a great probability of causing substantial and irreparable harm." It is alleged that Bloomberg's failure to provide plaintiff and the proposed class with notices of automatic renewal of the Agreement rendered the successive Agreements inoperative and unenforceable. As a result, according to plaintiff, he and members of the putative class are entitled to declaratory relief that the Agreements are unenforceable, and that its members are entitled to injunctive relief necessary to ensure that Bloomberg's "illegal, unfair and deceptive conduct will not continue into the future."

CPLR 3001 allows a court to render a declaratory judgment as to the rights of the parties when there is a justiciable controversy (i.e., one involving a present, rather than hypothetical, contingent or remote prejudice to the plaintiff) (*see American Ins. Assn. v Chu*, 64 NY2d 379, 383 [1985]). Plaintiff has alleged that notwithstanding the statutory protection given to consumers by these statutes, Bloomberg's standard practice is to automatically renew its subscribers' contracts without giving any advance notice of the automatic renewal provisions therein or the deadlines for terminating them. In other words, Bloomberg's standard practice is to violate the automatic renewal statutes.

Plaintiff further alleges that despite the fact that Bloomberg's renewals are both "inoperative" and "unenforceable" due to its failure to provide the statutorily-required notice, Bloomberg treats all of its subscriber contracts as having been automatically renewed. It sends bills and collects fees under the service contracts. When subscribers, like plaintiff, attempt to terminate the services, Bloomberg, in the words of plaintiff, "brazenly tells them that they cannot do so because their contracts were automatically renewed." Bloomberg then falsely informs its subscribers that their only choices are to continue the service and pay for the remainder of the term, or discontinue the service and pay a termination fee equal to 50% of the charges for

the remainder of the two-year "renewed" term. Moreover, plaintiff claims, if a subscriber refuses to pay fees under a "renewed" contract, Bloomberg "unleashes its bill collectors" from its New York headquarters, and bombards subscribers with dunning letters, e-mails, collection notices, and threats, misrepresenting that the subscribers are in breach of the contract; and if they do not pay, Bloomberg threatens to report them to the credit bureaus and refer them to collection agencies. This does not appear to me to warrant the "no harm, no foul" approach the courts have taken to this case.

Whether the case merits class action status is another matter and, in my view, should be left to the sound discretion of the trial court. But this seems to me like an appropriate use of our declaratory judgment jurisprudence, and I would reinstate that cause of action.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and SMITH concur with Judge JONES; Judge PIGOTT dissents in part in a separate opinion.

Order affirmed, with costs.