[986 NYS2d 42]

HEALTHCARE I.Q., LLC, Respondent, v TSAI CHUNG CHAO, MD, Doing Business as NATURO-MEDICAL HEALTH CARE, P.C., Appellant.

First Department, May 6, 2014

### APPEARANCES OF COUNSEL

*Moritt Hock & Hamroff LLP*, Garden City (*Robert M. Tils* of counsel), and *Loanzon LLP*, New York City (*Tristan C. Loanzon* of counsel), for appellant.

*Manuel & Associates, LLP*, New York City (*Charles B. Manuel Jr.*, *Daniel Goldstein* and *Robert Rosenberg* of counsel), for respondent.

### OPINION OF THE COURT

GISCHE, J.

This breach of contract action arises from a Practice Management and Licensing Agreement between the parties dated February 6, 2007. Plaintiff Healthcare I.Q. (HCIQ), a health care services company, agreed to provide Dr. Tsai Chung Chao, M.D. and his medical practice (collectively Dr. Chao) with coding, billing, collection and other services aimed at improving the efficiency of Dr. Chao's office operations. The agreement, which provides for the licensing of HCIQ's office management program software to Dr. Chao, and was initially for a 36 month term commencing February 1, 2007, includes a "HIPAA Business Association Addendum" providing that all the information entrusted to HCIQ is regulated by the Federal Health Insurance Portability and Accountability Act of 1996 (45 CFR 164.501). It further provides that upon termination of the agreement, the "Business Associate [HCIQ] shall return or destroy all Protected Health Information received from Covered Entity [Dr. Chao], or created or received by the Business Associate on behalf of Covered Entity." The agreement's "Termination" identifies Dr. Chao's "unauthorized use" of the program as a qualifying, terminating event.

All of the records generated, prepared and maintained by Dr. Chao and his staff, including patients' confidential records and files, were scanned and uploaded into the program on an ongoing basis and were used by HCIQ in coding, tabulating, reviewing and analyzing Dr. Chao's billables, reimbursements, and billing procedures. Under the agreement, HCIQ was responsible for "the Practice Staff, management and supervision of the medical billing, coding, collection of reimbursable insurance dollars, adherence to documentation guidelines, compliance issues, business issues, and for overall management of the medical facility." The program, which was to be installed on Dr. Chao's computers, is proprietary to HCIQ and is not available to the general community. HCIQ charged Dr. Chao a basic retainer fee

of $14,000 per month for its program and services. Although Dr. Chao was also subject to a per use fee when accessing the records and files scanned or uploaded to the program, there was a $15,000 cap on the monthly retainer fee. The cap remained effective for the "term of this Agreement."

In addition to the termination provisions, the agreement contained a "License" clause restricting Dr. Chao's use of the program in the following manner:

> "HCIQ grants the Practice a limited, non-exclusive, non-transferrable, non-assignable license to incorporate the Program(s) provided by HCIQ into licensee's desktop or network information system, as the case may be, for the term of this Agreement, subject to any early termination of this Agreement. Thereafter, this Agreement shall be automatically renewed for additional eighteen (18) month periods unless either party by written notice notifies the other at least ninety days before the end of any eighteen (18) month renewal period that it intends to terminate the services provided for hereunder, and such notification shall be effective one hundred and eighty (180) days thereafter."

Dr. Chao paid the monthly retainer throughout the initial 36 month term of the agreement from February 2007 to January 2010. He also made a $15,000 payment to HCIQ in February 2010. According to HCIQ, Dr. Chao and its principal informally discussed whether Dr. Chao would be renewing the agreement for an additional term and Dr. Chao said that he would renew it, a statement which Dr. Chao denies. It is undisputed that HCIQ did not provide Dr. Chao with any written notice that the agreement would be automatically renewed for another 18 month term, nor did Dr. Chao notify HCIQ in writing that he did not intend to renew the agreement at that time.

After February 2010, Dr. Chao and his staff continued to use the program to access patient records, although he stopped making payments to HCIQ. According to Dr. Chao, he had no choice but to use the program to access patient records and other files which had been scanned and uploaded. Dr. Chao and his staff last used the program in June 2010, at which time HCIQ commenced this action.

Although neither party provided written notice regarding the renewal or non-renewal of the agreement after the initial term ended, each side takes the position that it was under no obliga-

tion to do so. Dr. Chao relies on the requirements in General Obligations Law § 5-903 and HCIQ relies on the automatic renewal provision of the agreement. The only written notice regarding the agreement was made by Dr. Chao on October 18, 2012, at which time he notified HCIQ that he was terminating the agreement effective March 2010, "consistent with my verbal termination of the agreement in early 2010." He sent the notice only after this action was commenced. HCIQ maintains that Dr. Chao never terminated the agreement, which automatically renewed twice for two consecutive 18 month terms, and that Dr. Chao owes $525,000.

The parties' dispute centers on whether the agreement is a contract for "service . . . to or for . . . personal property"* under General Obligations Law § 5-903 (2), which would render its automatic renewal provision (evergreen clause) unenforceable unless HCIQ provided timely prior written notice calling Dr. Chao's attention to it. If section 5-903 (2) does not apply to the parties' agreement then Dr. Chao had the affirmative obligation to cancel before the automatic renewal period.

Dr. Chao did not assert General Obligations Law § 5-903 as an affirmative defense in his original answer, but previously moved for summary judgment on this basis. The court denied his motion because it was based on an unpleaded defense and was, therefore, waived. It did not decide the merits of the argument. Dr. Chao filed a notice of appeal from the motion court's earlier decision, but did not perfect it. Thereafter, HCIQ moved for leave to amend its complaint to increase the ad damnum clause and its motion was granted, resulting in the filing and serving of an amended complaint. Dr. Chao served an answer to the amended complaint, this time asserting General Obligations

---

* In its entirety, General Obligations Law § 5-903 (2) provides that "[n]o provision of a contract for service, maintenance or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance or repair gives notice to the person furnishing such contract service, maintenance or repair of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service, maintenance or repair, unless the person furnishing the service, maintenance or repair, at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, shall give to the person receiving the service, maintenance or repair written notice, served personally or by certified mail, calling the attention of that person to the existence of such provision in the contract."

Law § 5-903 as an affirmative defense and subsequently moved for summary judgment on this basis. The motion court denied the motion and sanctioned Dr. Chao for bringing a successive summary judgment motion on the same legal ground he had raised in the first motion (*Healthcare I.Q., LLC v Tsai Chung Chao*, 2013 NY Slip Op 32144[U] [2013]).

■ We find that the second summary judgment motion, brought after the pleadings were amended on a substantive issue not previously decided by the court, was procedurally proper. "Once plaintiff served the amended complaint, the original complaint was superseded, and the amended complaint became the only complaint in the action. The action was then required to proceed as though the original pleading had never been served" (*Plaza PH2001 LLC v Plaza Residential Owner LP*, 98 AD3d 89, 99 [1st Dept 2012] [internal quotation marks and citation omitted]). Thus, defendant's appeal from the prior order denying summary judgment became moot (*see Baker v 16 Sutton Place Apt. Corp.*, 2 AD3d 119, 120 [1st Dept 2003]), and "sufficient cause . . . exist[ed]" for his motion for summary judgment dismissing the amended complaint (*Varsity Tr. v Board of Educ. of City of N.Y.*, 300 AD2d 38, 39 [1st Dept 2002] [internal quotation marks omitted]). We therefore vacate the award of sanctions against Dr. Chao.

General Obligations Law § 5-903 does not define "personal property," although it broadly defines "person" as "an individual, firm, company, partnership or corporation" and also states that its restrictions apply unless "the person receiving the service" is served with advanced notice calling its attention to the renewal clause in the contract (General Obligations Law § 5-903 [2]). The statute does not require that the person own the "personal property" being serviced, and section 5-903 has been analyzed by courts in a variety of circumstances to determine its applicability. Personal property has been interpreted to include intellectual property as well as tangible personal property (*Ovitz v Bloomberg L.P.*, 77 AD3d 515 [1st Dept 2010], *affd* 18 NY3d 753 [2012] [terminal, software and other equipment to access real-time financial information services]; *NYDIC/Westchester Mobile MRI Assoc. v Lawrence Hosp.*, 242 AD2d 686 [2d Dept 1997], *lv denied* 91 NY2d 807 [1998] [mobile magnetic resonance image systems]; *Mount Vernon Amusement Co. v Georgian Rest. Corp.*, 30 AD2d 823 [2d Dept 1968] [cigarette vending machines]; *Dime Laundry Serv. v 230 Apts. Corp.*, 120 Misc 2d 399 [Sup Ct, NY County 1983] [coin operated laundry

equipment]; *Telephone Secretarial Serv. v Sherman*, 49 Misc 2d 802 [Nassau Dist Ct 1966], *affd* 28 AD2d 1010 [2d Dept 1967] [doctor's telephone answering service]). The purpose of the notice provision is to protect service recipients from the harm of unintended automatic renewals of contracts for consecutive periods (*see Ovitz*, 77 AD3d 515; *Guerrero v West 23rd St. Realty, LLC*, 45 AD3d 403 [1st Dept 2007], *lv denied* 10 NY3d 707 [2008]). Since section 5-903 is remedial in nature it is construed broadly (*Peerless Towel Supply Co. v Triton Press*, 3 AD2d 249, 251 [1st Dept 1957]; *NYDIC/Westchester Mobile MRI Assoc.*, 242 AD2d at 687).

We find that the parties' agreement was "for service . . . to or for . . . personal property" within the meaning of the General Obligations Law. The services provided were directly and inextricably related to the billing and medical records of the practice, which are personal property. We reject HCIQ's characterization of its services as being merely of a consulting, analytical or administrative nature rendering the statute inapplicable (*see Donald Rubin, Inc. v Schwartz*, 160 AD2d 53, 56-57 [1st Dept 1990] [administration of an employee benefits plan]; *Prial v Supreme Ct. Uniformed Officers Assn.*, 91 Misc 2d 115, 117 [App Term, 1st Dept 1977] [retainer for legal services]). Here the agreement provided for HCIQ to take dominion over the records, and to maintain and organize them on an ongoing basis for billing and reimbursement purposes. This was not merely incidental access to the records in the context of administrative or consulting services.

Under the agreement, HCIQ had use of and access to all of Dr. Chao's records and files, even his patients' protected health information subject to HIPAA (45 CFR 164.501). Dr. Chao was obligated to turn over "100% of [his] paper and electronic claims and Explanation of benefits to HCIQ" on a daily basis so that HCIQ could fulfill its contractual responsibilities. This level of unfettered use, access, physical possession and management of a service recipient's records and files, much of it containing protected patient information, exceeds the scope of incidental information provided for consulting and administrative services (*see Donald Rubin, Inc.*, 160 AD2d at 56-57). Although the records and files, whether the personal property of the practice or of his patients, were accessible in an electronic form through a computer, these records had an existence, separate and apart from the program into which they were uploaded, processed or accessed (*see Wornow v Register.Com, Inc.*, 8 AD3d 59 [1st Dept

2004]). Thus, the records, files and other documents, regardless of who they belonged to are "personal property" that HCIQ serviced and maintained. The nature of some of these records is further underscored by the HIPAA addendum requiring the return or destruction of certain records in HCIQ's possession upon termination of the agreement.

██ Since the renewal clause was not timely brought to Dr. Chao's attention, the agreement did not automatically renew on February 1, 2010 (*see e.g. Protection Indus. Corp. v DDB Needham Worldwide*, 306 AD2d 175 [1st Dept 2003]). Dr. Chao had the right to cancel the agreement at any time thereafter (*see e.g. Concourse Nursing Home v Axiom Funding Group*, 279 AD2d 271 [1st Dept 2001]). Although Dr. Chao and his staff continued to access certain records through the program until June 2010, they did so to access patient information; Dr. Chao stopped sending files to HCIQ for processing in February 2010. It is unrefuted that Dr. Chao demanded the return of these files, as he had the right to do under the HIPAA addendum, but they were neither returned to him nor were they destroyed by HCIQ as required. Under these circumstances, Dr. Chao did not "knowingly and willingly . . . accept the benefit of the" licensed software beyond the term of the agreement without compensating HCIQ (*id.* at 271).

Accordingly, the order of the Supreme Court, New York County (Eileen Bransten, J.), entered on or about September 9, 2013, which denied defendant's motion for summary judgment dismissing the amended complaint and granted plaintiff's cross motion for summary judgment and for sanctions, should be unanimously reversed, on the law, without costs, the motion granted, and plaintiff's cross motion denied. The Clerk is directed to enter judgment accordingly.

MAZZARELLI, J.P., SWEENY, DEGRASSE and MANZANET-DANIELS, JJ., concur.

Order, Supreme Court, New York County, entered on or about September 9, 2013, reversed, on the law, without costs, defendant's motion granted, and plaintiff's cross motion denied. The Clerk is directed to enter judgment accordingly.