# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Anaptyx, LLC, Appellant,

v.

Golf Colony Resort II at Deer Track Homeowners' Association, Inc., Respondent,

AND

Anaptyx, LLC, Appellant,

v.

Golf Colony Resort IV at Deer Track Homeowners' Association, Inc., Respondent,

AND

Anaptyx, LLC, Appellant,

v.

Deerfield Plantation Community Services Association, Inc., Respondent,

AND

Anaptyx, LLC, Appellant,

v.

Tradewinds Homeowners' Association, Inc., Respondent.

Appellate Case No. 2020-000391

_____

Appeal From Horry County
Larry B. Hyman, Jr., Circuit Court Judge

Opinion No. 6010
Heard March 9, 2023 – Filed August 2, 2023

**AFFIRMED**

Robert Wade Maring, of Maring & Moyer, LLC, of
Georgetown, for Appellant.

Willard D. Hanna, Jr., of Hanna Law, PA, of Myrtle
Beach, and Jonathan Patrick Hanna, of Neill Law Firm,
PA, of Murrells Inlet, for Respondents.

**GEATHERS, J.:** In these four consolidated appeals, Appellant Anaptyx, LLC (Anaptyx) seeks review of the circuit court's respective orders granting summary judgment to Respondents, Golf Colony Resort II at Deer Track Homeowners' Association, Inc., Golf Colony Resort IV at Deer Track Homeowners' Association, Inc., Deerfield Plantation Community Services Association, Inc., and Tradewinds Homeowners' Association, Inc. (collectively, the HOAs). Anaptyx argues the circuit court erred by dismissing its respective breach of contract actions against the HOAs because there was no evidence to support the finding that the contracts to provide internet access service, via Wi-Fi,[1] to the HOAs were contracts "for services to or for real property" for purposes of New York General Obligations Law § 5-903. We affirm.

## FACTS/PROCEDURAL HISTORY

On October 1, 2012, Anaptyx entered into four separate contracts with the respective HOAs to provide "Bulk Wi-Fi and Internet access services" to occupants

---

[1] A "Wi-Fi" certification mark is "used to certify the interoperability of wireless computer networking devices." *Wi-Fi*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/Wi-Fi (last visited June 12, 2023).

of the properties owned by each HOA. The recitals in each contract state, "Owner owns the property referred to above (including all buildings, improvements, and the underlying land, the 'Property')" and "Owner and Operator desire to make the Service available to occupants at the Property ('Occupants') in accordance with the terms and conditions of this agreement."

The four contracts were identical except for information identifying the respective signatories, and the initial term of each contract was five years and three months. Section 5 of each contract provided that the initial term would be automatically extended for an additional term "equal to the initial Term years unless either party notifie[d] the other at least 121 days before the expiration of the . . . Term . . . that it d[id] not wish to extend the agreement." Further, section 14.3 of each contract stated, "This agreement is governed by and shall be interpreted under the laws of the state of New York, without regard to its choice-of-law provisions."[2]

On April 3, 2018, Anaptyx filed these four breach of contract actions against the respective HOAs, alleging that after the initial term for each contract had been automatically extended, the HOAs advised Anaptyx that they had hired another service provider and disconnected the equipment of Anaptyx located at their respective properties. Anaptyx also alleged that the HOAs had failed to pay the sums due under the contracts since January 1, 2018. The HOAs then filed their respective answers and counterclaims for breach of contract and violation of the South Carolina Unfair Trade Practices Act.[3] They later amended their pleadings to add the defenses of failure to state a claim on which relief can be granted (Rule

---

[2] "Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." *Howell v. Covalent Chem., LLC*, 435 S.C. 345, 351, 867 S.E.2d 264, 267 (Ct. App. 2021) (quoting *Skywaves I Corp. v. Branch Banking & Tr. Co.*, 423 S.C. 432, 448–49, 814 S.E.2d 643, 652 (Ct. App. 2018)). "However, a choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy." *Id.* (quoting *Skywaves*, 423 S.C. at 449, 814 S.E.2d at 652). No party in the present case questions the application of New York law to the respective contracts or argues that this application would result in a violation of South Carolina public policy. Additionally, under New York law, contractual choice-of-law provisions "typically apply to only substantive issues." *Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059, 1061 (N.Y. 2010).

[3] S.C. Code Ann. §§ 39-5-10 to -730 (2023).

12(b)(6), SCRCP) and failure to provide the notice required by New York General Obligations Law § 5-903. Section 5-903 covers contracts for "service, maintenance[,] or repair to or for real or personal property" and addresses automatic renewal provisions in those contracts. The statute conditions the enforceability of an automatic renewal provision on the service provider's notice to the receiver of the services calling the recipient's attention to the existence of the automatic renewal provision at least fifteen days before the time specified in the contract for the service recipient to serve notice of cancellation.

Subsequently, the HOAs filed their respective summary judgment motions on the ground that Anaptyx failed to provide the notice required by section 5-903 and, therefore, rendered the automatic renewal provision in each contract unenforceable. The circuit court granted summary judgment to the HOAs and later denied the respective motions for reconsideration filed by Anaptyx. This appeal followed.

## ISSUE ON APPEAL

Did the circuit court err by concluding that the disputed contracts are contracts for services to or for real property for purposes of New York General Obligations Law § 5-903?

## STANDARD OF REVIEW

This court reviews the grant of a summary judgment motion under the same standard applied by the circuit court pursuant to Rule 56(c), SCRCP. *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 14 n.2, 677 S.E.2d 612, 614 n.2 (Ct. App. 2009). Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *George v. Fabri*, 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). "In that way, '[a] motion for summary judgment is akin to a motion for a directed verdict' because '[i]n each instance, one party must lose *as a matter of law*.'" *Id.* (quoting *Main v. Corley*, 281 S.C. 525, 526, 316 S.E.2d 406, 407 (1984)).

## LAW/ANALYSIS

Anaptyx maintains there was no evidence to support the circuit court's finding that the disputed contracts are contracts for services to or for real property for purposes of New York General Obligations Law § 5-903. We disagree.

Section 5-903(2) of the New York General Obligations Law provides:

> No provision of a contract for service, maintenance[,] or repair to or for any real or personal property which states that the term of the contract shall be deemed renewed for a specified additional period unless the person receiving the service, maintenance[,] or repair gives notice to the person furnishing such contract service, maintenance[,] or repair of his intention to terminate the contract at the expiration of such term, shall be enforceable against the person receiving the service, maintenance[,] or repair, *unless the person furnishing the service*, maintenance[,] or repair, at least fifteen days and not more than thirty days previous to the time specified for serving such notice upon him, *shall give to the person receiving the service*, maintenance[,] or repair *written notice*, served personally or by certified mail, *calling the attention of that person to the existence of such provision in the contract*.

(emphases added). "The purpose of the notice provision is to protect service recipients from the harm of unintended automatic renewals of contracts for consecutive periods." *Healthcare I.Q., LLC v. Tsai Chung Chao*, 986 N.Y.S.2d 42, 46 (N.Y. App. Div. 2014). "Since § 5-903 is remedial in nature it is construed broadly." *Id.*; *see also Tel. Secretarial Serv. v. Sherman*, 284 N.Y.S.2d 384, 385–86 (N.Y. App. Div. 1967) ("The words 'service, maintenance or repair' in section 5-903 are to be generously read in order that their scope will engage the variegated evil the statute was intended to meet.").

Here, the circuit court concluded that the respective contracts between Anaptyx and the HOAs were contracts for services to or for real property. Although the circuit court employed the word "find" rather than "conclude" in its final order, the court's ruling was more characteristic of a conclusion of law because it applied New York statutory law to the parties' contracts and construed the statute broadly in accordance with New York case law. *See supra*. In fact, during the summary judgment hearing and oral argument before this court, Anaptyx conceded that the

question of whether its internet service fell within the language of section 5-903 was a "matter of law."

In any event, the circuit court included in its findings of fact the contracts' terms requiring the provision of Wi-Fi service by Anaptyx to "the occupants of [the respective properties] owned by the [HOAs]," and these contractual provisions provide ample evidence to support the circuit court's ultimate "finding" that the respective contracts were contracts for services to or for real property, as we explain below. The circuit court also noted that counsel for Anaptyx conceded every finding of fact set forth in the order, including the finding that Anaptyx did not provide the notice required by section 5-903. Therefore, this case is one that does "not require the services of a fact finder." *George*, 345 S.C. at 452, 548 S.E.2d at 874.

As a matter of law, the circuit court correctly applied section 5-903 to the contracts between Anaptyx and the HOAs. The recitals of each contract state that (1) "Owner owns the property referred to above (including all buildings, improvements, and the underlying land, the 'Property')" and (2) "Owner and Operator desire to make the Service available to occupants at the Property ('Occupants') in accordance with the terms and conditions of this agreement." Section 1 of each contract, entitled "Operator's Service Obligations," states, in part, "Upon completion of construction of the System (as defined hereafter), Operator shall make the Service available *to the Occupants* during the Term." (emphasis added).

Section 1 also defines "Services" as "Operator's Bulk Wi-Fi and Internet access services delivered over the Operator's System" and requires Anaptyx to "make the services available to end-users 24 hours per day, 7 days per week, excluding scheduled maintenance and required repairs." The term "System" is defined in each contract as "Operator[']s wi-fi System, [which] is comprised of all equipment, wiring (including internal building wiring and external distribution wiring), conduit, molding and other facilities that the Operator owns or installs or that Operator otherwise uses *to deliver the services to the property*." (emphasis added). As the Operator, Anaptyx is required by each contract to "*maintain, repair*[,] and operate the System in accordance with industry standards and Laws and Regulations." (emphasis added).

In sum, applying the terms of section 5-903, which must be broadly construed,[4] to the plain language of the contracts' provisions, compels us to conclude

---

[4] *Healthcare I.Q.*, 986 N.Y.S.2d at 46.

that the contracts are "for service, maintenance[,] or repair to or for any real or personal property."[5]  Therefore, section 5-903 required Anaptyx to notify the HOAs of the automatic renewal provision in the respective contracts at least fifteen, and not more than thirty, days prior to the time specified in the contracts for serving a notice of cancellation on Anaptyx.  Anaptyx conceded that it did not provide this notice.

## CONCLUSION

Accordingly, we affirm the circuit court's respective orders granting summary judgment to the HOAs.

**AFFIRMED.**

**WILLIAMS, C.J., and VERDIN, J., concur.**

---

[5] As to whether the services were provided to real or personal property, there is merit in the HOAs' argument that the contracts concerned real, as opposed to personal, property because the Occupants must be located on, or very near, the subject real property in order to access the Wi-Fi signal.

On the other hand, the parties' contracts expressly contemplate the use of hardware and software in accessing the Wi-Fi service.  For example, section 8.2 disclaims liability for any "file or data loss or hardware or software loss or destruction" resulting from use of the Wi-Fi service.  The hardware and software used to access the service is undoubtedly personal, rather than real, property.  Nonetheless, services provided to personal property are also covered by section 5-903, which references "a contract for service, maintenance[,] or repair to or for any real *or* personal property." (emphasis added).  Therefore, even if the contracts were for "service, maintenance[,] or repair to or for" personal, rather than real, property, this court may affirm the circuit court's ruling on that ground.  *See* Rule 220(c) ("The appellate court may affirm any ruling, order, decision[,] or judgment upon any ground(s) appearing in the Record on Appeal.").